Patsy ERVIN, Appellant,

v.

Gary ERVIN, Appellee.

No. 5654.

Court of Appeals of Texas, Eastland.

Sept. 24, 1981.

Rehearing Denied Oct. 15, 1981.

Truman P. Kirk, Cisco, for appellant.

Gale Warren, Stephenville, for appellee.

DICKENSON, Justice.

This is a divorce case in which the wife appeals the trial court's division of property.

Patsy Ervin, petitioner, filed her petition for divorce from Gary Ervin, respondent. They were married on July 12, 1977, and they separated on May 17, 1979. On July 2, 1979, the wife executed a quitclaim deed to the husband of her "right, title and interest" in a tract of land. The wife's claim for reimbursement of that land's "enhanced value from community funds and efforts" was denied by the trial court after a nonjury hearing on October 29, 1980, in which both parties testified. The wife appeals. We affirm.

The trial court made the following findings of fact in compliance with Tex.R.Civ.P. 296:

\* \* \* \* \* \*

6. On February 9, 1979, Respondent received the real property described in the Judgment by gift from his parents.

7. Petitioner and Respondent thereafter purchased a house and moved same onto the aforementioned real property. The cost of said house was $6,000.00.

8. After their moving said house onto the property, Petitioner and Respondent executed a mechanic's lien note for $11,-000.00 for the cost of the house and improvements thereto.

9. After their moving said house onto the property, Petitioner and Respondent physically worked together on the improvements to said house.

10. On July 2, 1979, after Petitioner had vacated said property, Petitioner executed a "quit claim" deed to the aformentioned real property to Respondent. The consideration for said deed was from Respondent's separate estate, including his sole assumption of the indebtedness against said real property.

11. The proceeds of a long-term note were utilized to liquidate the aforementioned mechanic's lien note. The said long-term note was executed solely by Respondent with aforesaid real property being placed as security therefor. The long-term note was executed after July 2, 1979.

12. The sum of $982.44 was paid by Respondent as accrued interest due on the said mechanic's lien note. There is no evidence concerning the source of these funds.

13. Respondent paid six payments of $132.16 each on the long-term note prior to the time of trial. There is no evidence of the source of these funds.

14. Although there is some evidence of the cost of improvements to the Respondent's separate estate and of the current market value thereof, there is no evidence of the amount of enhancement, if any, directly attributable to community funds expended.

15. Respondent had assumed the indebtedness against the real property at the time of trial and said real property was the security therefor.

16. There was no pleading or proof of rescission, fraud, accident or mistake in connection with the "quit claim" deed executed by Petitioner to respondent.

17. Petitioner was not coerced to sign said "quit claim" deed to Respondent.

18. The following were the only items of community property:

   a.  table saw;

   b.  router;

   c.  .357 magnum pistol;

   d.  Craig 8-track tape recorder;

   e.  washing machine;

   f.  savings account of $120.00;

   g.  checking account of $100.00;

   h.  1965 Chevrolet automobile;

   i.  1980 Chevrolet pickup;

   j.  pressure cooker;

   k.  gas cook stove;

   l.  blender; and

   m.  personal effects.

19. All community debts had been liquidated at the time of trial by Respondent with the exception of a debt on the 1980 Chevrolet pickup.

The trial court also made these additional findings of fact in compliance with Tex.R. Civ.P. 298:

1. The said house had a value of $24,-180.00 at the time of the hearing.

2. At the date of execution of the mechanic's lien note, Petitioner and Respondent were married, although separated.

3. Payments made on the interim mechanic's lien note and the long term note were made while the parties were married, although separated.

4. Household "belongings", both separate and community, were valued at $4,500.00 to $5,500.00 at the time of trial.

The findings of fact which have not been properly challenged by points of error are conclusively established. This court is bound by those findings of fact. See, e. g., *Whitten v. Alling & Cory Company*, 526 S.W.2d 245, at 248 (Tex.Civ.App.— Tyler 1975, writ ref'd). We also note that omitted findings which relate to any ground of recovery or defense upon which findings were made, when supported by evidence,

must be presumed to have been found in support of the trial court's judgment. See Tex.R.Civ.P. 299.

■ The wife has briefed seven points of error. Point One argues that the trial court erred "in considering the quitclaim deed and title to the land as the apparent sole issue, and that all the property must go with that title regardless of equity." This point is overruled. The findings of fact clearly show that the trial court took other matters into consideration in exercising its discretion under Tex.Fam.Code Ann. § 3.63 (Vernon 1975) and dividing "the estate of the parties in a manner the court deems just and right." There is no showing on this appeal that the trial court abused that discretion. See *Bell v. Bell*, 513 S.W.2d 20 (Tex.1974); *Walker v. Walker*, 608 S.W.2d 326 (Tex.Civ.App.—Eastland 1980, no writ). The Decree of Divorce shows that the wife was awarded all household furniture, furnishings, fixtures, goods, appliances and equipment in her possession or subject to her control; all clothing, jewelry and other personal effects in her possession or subject to her control; $300 in cash plus $350 in attorney fees; and a 1965 Chevrolet automobile. The record shows that the parties lived together less than two years and that most of the property was owned by the husband before the marriage or given to him during the marriage by his parents.

■ Point Two argues that the trial court erred "in holding, if it did so hold, that a quitclaim deed from the wife to the husband conveyed the homestead rights." This point is overruled. There is no finding that the house which was moved upon the husband's separate real estate was the parties' homestead, and that fact is not conclusively established by the parties' testimony. The record shows that the parties married on July 12, 1977, and that the land was given to the husband by his parents "as his sole and separate property" on February 9, 1979. After that date they purchased a house and moved it onto his property. The record shows that Petitioner and Respondent worked together on improvements to the house until they separated on May 17, 1979. Petitioner has failed to establish her claim under Tex.Fam.Code Ann. § 5.81 (Vernon 1975) because there is no finding of fact, and it is not conclusively established, as to whether the parties actually established a homestead in that house. The testimony shows that Respondent also owned a 1968 Diamond mobile home.

■ Point Three argues that the trial court erred "in holding, if it did so hold, that it could not consider parol evidence in regard to consideration, purpose and explanation of the quitclaim deed, if in fact, such deed had any effect to change the character of the property from community to separate." This point is overruled. The quitclaim did not change the character of the property, but it did release the wife's claim to reimbursement for the enhancement in value of the husband's separate real estate. See *Burton v. Bell*, 380 S.W.2d 561 (Tex. 1964). The wife released all of her right, title and interest in this property as of July 2, 1979. That was after the house was purchased and moved upon the one-half acre tract of land which the husband's parents had given to him. The quitclaim deed recites that the husband "assumes all indebtedness due on said property." The record shows that the community debt for $11,000 was released and that permanent financing was arranged in which the lender agreed to look to the husband, and not the wife, for payment of that debt. Moreover, the fact that the wife's "purpose" in executing the quitclaim was to permit the replacement of interim financing with permanent financing does not alter the legal "effect" of the instrument. Its legal effect was to release all of her claims, as of the date of its execution, for reimbursement for any enhancement in the value of the property.

Point Four argues that the trial court erred "in finding, if it did so find, that the pleadings of appellant were insufficient." This point is overruled, for the trial court made no such finding.

■■ Point Five argues that the trial court erred "in finding consideration for the

quitclaim deed when there was no evidence offered showing such consideration." This point is overruled. The face of the quitclaim deed shows that "Grantee assumes all indebtedness due on said property." This would constitute consideration. Moreover, consideration is not required for the deed to be valid.

Point Six contends that the trial court "was in error to hold, if it did so hold, that the quitclaim deed was an instrument of partition between the parties in contemplation of divorce." This point is overruled. The trial court did not hold that the quitclaim deed was an instrument of partition.

Point Seven argues that the trial court erred "in not considering the intention of the parties and other circumstances bearing on the improvements and equitable considerations." This point is also overruled. There is no showing that the trial court failed to consider all of the circumstances in making its division of the property. The trial court did not err in giving effect to the quitclaim deed.

The judgment of the trial court is affirmed.

## ON REHEARING

Appellant's motion for rehearing contends that this Court erred in finding that her quitclaim deed released all of her claims, as of its date of execution, for reimbursement for any enhancement in the value of the property described in that instrument. She cites the recent case of *Anderson v. Gilliland*, 624 S.W.2d 243 (Tex. Civ.App.—Dallas 1981) in which the Dallas Court held that:

> (N)o *matured* right of equitable reimbursement for community expenditures on separate property arose until dissolution of the community. It follows, therefore, that the quitclaim deed at the time of execution and delivery conveyed nothing. . . .

We respectfully disagree with that holding. The Ervins were separated when she executed the quitclaim deed which provided:

That I, Patsy Ervin . . . do by these presents BARGAIN, SELL, RELEASE, AND FOREVER QUITCLAIM unto the said Gary D. Ervin, as his sole and separate property, his heirs and assigns, all my right, title and interest in and to that certain tract (describing the land) . . . TO HAVE AND TO HOLD the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging unto the said Gary D. Ervin, his heirs and assigns forever, so that neither I the said Patsy Ervin nor my heirs, nor any person claiming under me shall, at any time hereafter, have, claim, or demand any right or title to the aforesaid premises or appurtenances, or any part thereof.

We hold that appellant's claim for reimbursement (as to the improvements made up to that date) was sufficiently matured to constitute a claim against appellee's land and that this claim was released by the quitclaim deed.

The motion for rehearing is overruled.