**FORTY–SEVEN THOUSAND TWO HUNDRED DOLLARS U.S. CURRENCY ($47,200.00); 1984 Chevrolet Van VIN # 1GBEG25H6E7114311; 1988 Mercury Grand Marquis VIN # 2MEBM75F9JX656458, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00211–CV.

Court of Appeals of Texas, El Paso.

July 28, 1994.

Rehearing Denied Sept. 8, 1994.

Michael R. 'Mickey' Milligan, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for the State.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

*OPINION*

KOEHLER, Justice.

In a forfeiture of contraband property case under the provisions of Chapter 59 of the Texas Code of Criminal Procedure, the trial court ordered forfeiture of the sum of $47,200 cash and two vehicles seized in connection with the search of the residence of the owner under a valid warrant. We affirm.

Following a bench trial, the trial court filed findings of fact and conclusions of law. After summarizing the evidence, the court found that the $47,200 cash was the proceeds from the commission of a felony, and concluded that both the currency and two vehicles, a 1988 Mercury Marquis and a 1984 Chevrolet Van, "are contraband as defined in Chapter 59 of the Texas Code of Criminal Procedure" and therefore "subject to seizure and forfeiture because they were used in the commission of a felony under Chapter 481 of the Texas Health and Safety Code."

## FACTUAL BACKGROUND

In June of 1991, police officer Luis Marquez received several "Crimestopper" tips that Mary Noble[1], Appellant, and her sister, Diane Vigil, had transported "four hundred to six hundred pounds of marijuana to Oklahoma, and Dallas and other parts of the United States." Officer Marquez testified that as a result of this information, he arranged with the city sanitation department to have the trash at Noble's residence picked up and delivered to him. The trash contained approximately one and a half pounds of marijuana residue. Based on this evidence and the prior information, the officer obtained a search warrant which the police executed on November 1, 1991. In the search of Noble's home and yard, they found approximately 350 pounds of marijuana in a shed in her backyard. A hydraulic compactor or press, on a bracket of which was found some marijuana seeds and residue, was discovered in another shed. In Noble's bedroom, the police found $47,200 cash in a plastic bag inside a brown paper bag, a handgun, house papers, and marijuana residue in the dust bag attached to a vacuum cleaner. In another bedroom used by Diane Vigil, officers found marijuana residue, boxes of fabric softener wrapped with the marijuana, a scale, and a large amount of baking soda boxes. As part of a subsequent investigation, the bag containing the $47,200 cash was hidden in Noble's bedroom. A K-9 police dog, brought to the house for the purpose, alerted on the bag of money, apparently by scratching, pawing, barking, and pointing at it. According to Officer Marquez, Vigil told him at the time of the search that she had used Noble's 1984 Chevrolet Van and a 1988 Mercury Grand Marquis (both of which were seized subject to this forfeiture proceeding) to transport marijuana in the past, in exchange for which she would receive sums of money.

On appeal, Noble in ten points of error complains that the trial court erred: in points one and two, by forfeiting the entire $47,200 cash and the two vehicles because it failed to find, as required, a specific felony upon which to base the forfeiture; in points three and six, by forfeiting the two vehicles because there was no evidence that the vehicles were used in connection with the commission of a felony; and in points four, five, seven, eight, nine, and ten, by finding that the vehicles or cash were subject to forfeiture because used in connection with the commission of a felony for the reason that such finding was against the great weight and preponderance of the evidence.

## FAILURE TO FIND A SPECIFIC FELONY

Noble first complains that the trial court committed fundamental error and/or denied her right to due process in ordering forfeiture, as it failed to "find and state a specific felony crime upon which to base the forfeiture."[2]

Similar to her first point, Noble argues in her second point that the trial court abused its discretion[3] in ordering forfeiture without "making a proper finding that such property was subject to forfeiture based upon a specific felony crime." Where findings of fact are filed in response to a request, which findings include some elements but omit unrequested elements essential to a ground of recovery, the omitted findings if supported by evidence in the statement of facts, will be presumed to have been found in

1. Apparently also known as Mary Rosado.

2. Noble's complaint regarding the failure of the trial court to state a specific felony is, for all practical purposes, an argument that the State may not seek forfeiture of property without first alleging and proving a specific crime under which forfeiture may be ordered, a complaint directed at the lack of specificity in the pleadings. The purpose of pleadings is to define, for the court, the issues to be tried, and to give an opposing party adequate notice to enable her to prepare for an adequate defense. *See Murray v.*

*O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex. 1982). Where there is no evidence that special exceptions were urged (as in this case), a petition should be construed liberally in favor of the pleader. Thus, Noble waived any pleading error.

3. The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *citing Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.— 1939, opinion adopted), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

support of the judgment. *Bishop v. Bishop,* 359 S.W.2d 869, 871 (Tex.1962); *Ervin v. Ervin,* 624 S.W.2d 264, 266–67 (Tex.App.—Eastland 1981, writ dism'd); Tex.R.Civ.P. 299. In this case, although Noble did request additional findings, she did not request that the trial court find the specific felony on which it was basing the forfeiture. Thus, the judgment may be upheld on a presumed finding if supported by the evidence. In this regard, we note that the trial court found, in its findings of fact and conclusions of law, that the vehicles and cash which form the basis of this suit were used in, in the case of the vehicles, and was obtained from, in the case of the $47,200, the commission of a felony under Chapter 481 of the Texas Health and Safety Code. It follows that if there is sufficient evidence in the record to support a particular ground of recovery, or felony, the finding is presumed.

### EVIDENCE SHOWING COMMISSION OF A FELONY

■ The previously recited factual background as shown by the evidence and record on appeal is sufficient to show that a felony, some Chapter 481 felony, was committed by Noble or Vigil or both. In particular, it is a felony to possess more than four ounces of marijuana. Tex.Health & Safety Code Ann. § 481.121 (Vernon Supp.1994). Certainly, Noble and Vigil had more than four ounces of marijuana in their possession. It is also a felony to knowingly or intentionally deliver more than one-fourth ounce of marijuana. *Id.* § 481.120. The Crimestopper's tip, the marijuana residue in the garbage, the amount of marijuana on hand, the scales, the hydraulic press and packaging equipment, and Vigil's admission would be some evidence that one or both of the women, as parties were delivering marijuana. Points of Error Nos. One and Two are overruled.

### NEXUS OR CONNECTION BETWEEN FELONY AND SEIZED PROPERTY

■ Property of any kind and nature, including cash and vehicles, is subject to seizure and forfeiture if it is found to be contraband, that is, if it used or intended to be used in the commission of any felony under Chapter 481, Health and Safety Code (Texas Controlled Substances Act). Tex. Code Crim.Proc.Ann. art. 59.01(2)(B)(i) and art. 59.02 (Vernon Supp.1994). In forfeiture cases, the State is required to show probable cause for seizing property, that is, a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *$56,700 in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987); Tex.Const. art. 1, § 9 (Vernon 1984). Without a showing of a substantial connection between the property to be forfeited and the statutorily defined criminal activity that establishes the required probable cause, the State lacks authority to seize a person's property. *$56,700,* 730 S.W.2d at 661. The State must prove by a preponderance of the evidence that the vehicles and cash in this case were subject to forfeiture. *A 1985 Cadillac Limousine v. State,* 835 S.W.2d 822, 825 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

### NO EVIDENCE CONTENTIONS

In her Points of Error Nos. Three and Six, Noble asserts that there is no evidence to support the court's finding and conclusion that her 1984 Chevrolet Van and 1988 Mercury Marquis were acquired with funds obtained from the commission of a felony or were used in the commission of a felony.

■ When analyzing a "no evidence" or legal sufficiency challenge, we consider only the evidence which tends to support the fact finder's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden,* 825 S.W.2d 772 (Tex.App.—El Paso 1992, no writ).

■ The evidence which supports the finding that Noble's two vehicles were contraband subject to forfeiture is the testimony of Detective Gerald Laneaux that Vigil told him at the time of the search and in Noble's

presence that she had used both vehicles "in the past" to transport marijuana and that she knew she was transporting marijuana. According to Laneaux, Noble did not deny anything that Vigil told him. Vigil also told Laneaux that she made one trip to Florida and when she returned to Noble's residence, she found 300 pounds of marijuana in the house. Laneaux testified that he had observed the trunk of the Mercury Marquis, that it smelled of marijuana, that "the whole bottom [of the trunk] was wet as if it had been washed out" and that it contained unopened packages of clear plastic baggies of the kind that are used in the marijuana trade.

The foregoing amounts to more than a scintilla of evidence that the two vehicles were used in delivering marijuana in quantities more than one-fourth ounce and circumstantially, that Noble was aware of what use Vigil was making of her van and automobile. Points of Error Nos. Three and Six are overruled.

## INSUFFICIENT EVIDENCE CONTENTIONS

In her remaining points of error (Four, Five, Seven, Eight, Nine, and Ten), Noble contends that the findings and conclusions that the entire $47,200 cash and the two vehicles are contraband because either obtained from or used in the commission of a felony is "so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust."

■■ Although couched in incorrect terminology, these complaints amount to factual sufficiency challenges. Properly speaking, when the complaining party wishes to attack an adverse finding for which she did not have the burden of proof, she should bring an "insufficient evidence" point rather than an "against the great weight and preponderance" challenge.[4]

■■ When a factual sufficiency challenge is brought, the court must first exam-

ine all of the evidence, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the Court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

## EVIDENTIARY ANALYSIS

In addition to the evidence set forth in the factual background section of this opinion, Noble testified that she had purchased the Chevrolet Van through a mechanic in Làs Cruces in 1985 and the Mercury Marquis from a man in El Paso for $3,000. She testified that to her knowledge, neither vehicle had ever been used to transport marijuana, nor was she aware that marijuana was in her storage shed.

With reference to the cash found in her bedroom, she testified that $36,900 of the cash was obtained from legitimate sources. She claimed that the other approximately $10,000 of the subject cash belonged to her sister and was in the latter's briefcase, apparently when the search first began. As to the $36,900, she stated that $15,000 was her share of a workers' compensation settlement, that $4,000 came from a social security settlement, that she had saved quite a bit of money from monthly payments of $800 from her ex-husband from 1984 to 1989 and $400 per month "through eighty-nine and ninety" and that "Mrs. Novelli ... paid me back $5,000." She supported her testimony with two documents entered into evidence, the first being a handwritten note from "Mary Lee Novelli", dated October 8, 1991, stating that she had repaid to Noble loans totalling $5,000 [5], and the second being a copy of a

---

4. *See, e.g.,* W. Dorsaneo, 6 TEXAS LITIGATION GUIDE, § 140.01[2], 140–6, 140–7; Powers & Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence",* 69 TEX.L.REV. 515 (1991); Calvert,

*"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960).

5. Defendant's Exhibit 1 is as follows:
 October 8th, 1991

workers' compensation compromise settlement agreement, dated April 17, 1991, awarding Noble $20,000 [6], in addition $27,132 previously paid for an industrial accident that occurred in February 1989. Noble also testified that except for a $1,400 account at Fort Bliss Federal Credit Union, she did not keep her money in her bank account because "[m]ost of the banks weren't safe" and because she believed her ex-husband would withdraw it believing it was his.

Noble argues that "the State must offer proof that does more than raise a mere surmise or suspicion concerning the source of the money[,]" citing *$8,500 v. State*, 774 S.W.2d 788 (Tex.App.—Houston [14th Dist.] 1989, no writ). She also asserts, based on language in *$56,700 v. State*, that where intended use of seized money is at issue, the State must do more than present a fact scenario that may suggest the money was obtained from or used for illegal purposes. Based on *$56,700*, her argument is that her testimony and evidence provided an alternate explanation for the presence of the seized money, rebutting any presumption or inference that the money was derived from the sale or distribution of marijuana.

In *$56,700*, the Supreme Court held that a neutral explanation may foreclose a trial court from holding that the State has proved its case by a preponderance of the evidence "[w]hen circumstances are consistent with either of two facts and nothing shows that one is more probable than the other." 730 S.W.2d at 662. In that case, although the money was found in the immediate vicinity of 22 grams of cocaine and 30 grams of marijuana and "[a]n array of paraphernalia," the defendant-in-interest, an architect, testified that he kept large sums of money on hand in connection with a hotel construction project in Mexico. His testimony was supported by the testimony of various subcontractors and suppliers. Court found that the circumstantial evidence gave rise to inferences equally

consistent with the proposition that he was merely "a purchaser/user of drugs" and "there is no more than a scintilla of evidence supporting the proposition that the currency is derived from or has its origin in the sale and/or commercial distribution of cocaine." 730 S.W.2d at 662.

In *$11,014 v. State*, 828 S.W.2d 814 (Tex. App.—Houston [1st Dist.] 1992, no writ), an airline passenger was detained and subsequently arrested on an immigration matter. The officers found in his suitcase money wrapped in bed sheets (on which a police dog had alerted because of the claimed presence of narcotics). The officers who claimed the passenger fit the general profile of a drug trafficker, did not find any drugs in his possession nor did they see any exchange of narcotics. The passenger testified that he had borrowed the money from relatives in order to purchase a used van and denied that the dog had alerted on the money or his suitcase. Furthermore, the officer admitted that no lab tests were performed to determine the presence of narcotics and to provide direct evidence showing an illegal source of the funds. The court concluded that since there was no direct evidence that the money was derived from the sale or distribution of drugs and the circumstantial evidence was "equally consistent with the proposition that Wilks [the passenger] was a purchaser and/or user of drugs," the evidence was insufficient to justify forfeiture.[7] 828 S.W.2d at 816–17.

 Where there is no direct evidence linking the seized money to illegal activity, as in this case, the State must present sufficient circumstantial evidence to meet its burden of proof by a preponderance of the evidence. *$8,500*, 774 S.W.2d at 792; *Henderson v. State*, 669 S.W.2d 385, 387 (Tex.App.—San Antonio 1984, no writ). Although the State must offer proof that does "more than raise a mere surmise or suspicion regarding the

---

I, Mary Novelli has now paid in full to Mary E. Noble a total of $5,000 for previous "loans" that was borrowed.
/s/Mary Lee Novelli

**6.** After deducting a $5,000 attorney's fee, she received $15,000, according to Noble's testimony and Defendant's Exhibit 2.

**7.** Actually, the only evidence in *$11,014* that the money had any connection with narcotics was the disputed claim by the State that the "narcotics detection dog" had alerted on the suitcase and then the money.

source of the money, it is required only to prove the fact through a balance of probabilities, and it is not required to exclude every other possible way in which the money might have been acquired." *$8,500,* 774 S.W.2d at 792.

The facts in this case differ considerably from those in *$56,700* and *$11,014.* While Noble did offer some explanation for the presence of a large sum of money, it was largely unsupported by any meaningful documentary evidence and could have been considered by the trial judge to be implausible or unbelievable.[8] On the other hand, the circumstantial evidence in this case from which the trial judge reasonably could have inferred that the money came from a commercial drug venture, included the following: information that both Noble and Vigil were involved in the transportation of at least four hundred pounds of marijuana, the presence of a significant quantity of marijuana residue in the garbage and a substantial quantity of marijuana stored on the premises, the presence of equipment and materials suitable for weighing, compacting and packaging marijuana, the presence of marijuana residue in the vacuum cleaner and some of the equipment, the fact that Vigil admitted in Noble's presence using her vehicles to transport marijuana, and that a police dog alerted to the money. It cannot be argued reasonably that the foregoing evidence is equally consistent with the proposition that Noble and Vigil were merely purchasers of marijuana for their own use and with the proposition that they were engaging in a commercial venture. We conclude that the circumstantial evidence is sufficient to support the trial court's finding and conclusion that the entire sum of *$47,200* are the proceeds from the commission of a felony under Chapter 481 of the Texas Health and Safety Code and are therefore subject to seizure and forfeiture. Noble's fourth, fifth, seventh, eighth, and tenth points are overruled.

Noble's ninth point complains, in effect, that the evidence is insufficient to support the trial court's finding that Noble "did not produce and has not produced any documentation of her claims" that $36,900 of the seized cash was obtained from various legitimate sources.[9] Since there was some documentation that she had received $15,000 in her workers' compensation settlement and $5,000 in repayment of a personal loan, this evidentiary finding was in error. This point of error is sustained.

However, an erroneous finding of fact will not require reversal if the judgment is otherwise correct on its merits. *Able v. Able,* 725 S.W.2d 778, 780 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Noble's documentary evidence, did little to support her testimony because it did not specifically identify the cash found at her residence as the same money she had received at various times in various amounts from various sources. As previously indicated, the trial judge could have reasonably concluded that this evidence was insufficient to provide a reasonable explanation for the presence of $47,200 in a paper bag in her bedroom.

The judgment of the trial court is affirmed.

8. The only reasons given by Noble for keeping a rather large sum of cash in a paper bag in her bedroom was that "[m]ost of the banks weren't safe" and because her ex-husband's name was still on her credit union account, he could go "to Fort Bliss and ... withdraw the money, thinking part of it was his[.]" Contrast that explanation with the explanation of Harry Farah in *$56,700:* that as an architect, he was involved in the construction and renovation of a hotel and restaurant in Mexico and that U.S. suppliers required up-front cash payment for the purchase of materials intended for use in Mexico. His explanation was supported by the testimony of subcontractors and suppliers. 730 S.W.2d at 662.

9. Summary of Evidence

13. The Respondent, Mary Noble testified of various legitimate sources from which this sum of cash, FORTY–SEVEN THOUSAND TWO HUNDRED DOLLARS U.S. CURRENCY ($47,200.00) was derived but did not produce and has not produced any documentation of her claims.