Porterfield v. Porterfield 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00284-CV







Charles Stanley Porterfield, Appellant



v.



Carol Jean Porterfield, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. C91-732C, HONORABLE CHARLES R. RAMSEY, JUDGE PRESIDING







PER CURIAM



 The trial court rendered a decree divorcing appellant Charles Stanley Porterfield
from appellee Carol Jean Porterfield and dividing their marital estate. The parties, at trial,
primarily disputed whether Charles' future military retirement pay was his separate property or
was community property. From the court's decree dividing the retirement pay as community
property, Charles appeals to this Court. We will affirm the trial court's decree.

 In point of error one, Charles contends that the trial court abused its discretion in
determining that the parties' agreement dividing Charles' future military retirement pay was not
just and right. Shortly after the parties separated, but before they divorced, Carol wrote Charles
a letter in which she described her finances as precarious and asked for the following help:



I've had Houssiere check some things out for me. I am eligible for 17½% of your
retirement fund. Believe it or not, I don't want it. I need help now not 6 years
down the road. By then I will have lost everything.


Not knowing what your retirement income will be, I can only guess. I figure I
could draw from $350. to $500. a month for the rest of my life. Like I said, I
don't want to do that.


If you will be willing to help me with $500. a month for 1 year, I will not put in
a claim against your retirement. Starting in Dec. if you will send me $500. a mo.
and stop next Dec. I'll not touch your retirement & you will be rid of me.



 The court found that, in accordance with her request, Charles paid Carol $500.00
monthly for the next twelve months. In her petition for divorce, Carol asked the trial court to set
aside the alleged agreement, allow her to repay Charles, and award her one-half of the military
retirement pay that accrued during their marriage. The trial court decreed that Carol receive an
undivided one-half interest in that part of Charles' military retirement pay that accrued during the
marriage and that she pay Charles $6,000.00. 

 Charles first argues that the parties entered a valid agreement incident to divorce. 
Parties anticipating a divorce can agree in writing to divide their property and liabilities. Tex.
Fam. Code Ann. § 3.631(a) (West 1993). (1) The terms of such an agreement bind the trial court
in a divorce proceeding unless it finds that the agreement is not just and right. § 3.631(b). 

 The court in this case made an ultimate finding of fact that the alleged agreement
by which Carol waived her share of military retirement benefits was not fair and equitable. See
Harding v. Harding, 461 S.W.2d 235, 237 (Tex. Civ. App.--San Antonio 1970, no writ). The
court supported this ultimate finding by several subsidiary findings: Carol wrote the letter without
the advice of legal counsel and without knowledge of the full nature, extent, or value of Charles'
military retirement benefits; no evidence existed that Charles fully disclosed to Carol the nature,
extent, or value of the military retirement benefits; Charles gave Carol inadequate consideration
for waiving her right to a portion of the benefits; and no evidence existed that Carol had the
benefit of independent advice concerning the nature, extent, and value of the military retirement
benefits to which the parties were entitled. Charles does not challenge the trial court's findings
that, when Carol wrote the letter, Charles had not served the minimum twenty years of active
military duty, he was not entitled to retire with benefits, and no benefits had vested in Charles.

 Charles argues that the evidence is legally and factually insufficient to support the
finding that the agreement was not just and right. In reviewing a no-evidence point, we examine
the record in the light most favorable to the finding to determine if any probative evidence, or
reasonable inferences therefrom, supports the finding, and we disregard all evidence and
reasonable inferences therefrom to the contrary. Glover v. Texas Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). In reviewing an
insufficient-evidence point, we examine the entire record and will set aside the finding only if the
evidence supporting it is so weak, or the evidence to the contrary so overwhelming, as to make
it clearly wrong and unjust. Garza, 395 S.W.2d 823; In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951).

 We first consider the court's finding that Carol lacked independent advice about
the nature, extent, and value of the military retirement benefits to which the parties were entitled. (2) 
Carol testified that before writing the letter to Charles she asked her attorney, Robert Houssiere,
if he knew anything about military retirement pay. Houssiere spoke to a military retiree on her
behalf and relayed to Carol the information that she was probably entitled to one-half of thirty-five
percent of Charles' retirement pay. Carol also testified, however, that she was not sure she was
entitled to military retirement benefits and that she sent the letter to try to get financial help from
Charles. She did not know how much any retirement benefits would be.

 Because Houssiere was personally unfamiliar with military retirement, Carol at his
suggestion visited Fort Sam Houston about one year after writing the letter. The legal advisor
there affirmed Carol's eligibility for part of the retirement, but again specified no amounts, and
she therefore asked for information at Randolph Air Force Base one year later.

 Although this evidence shows that Carol obtained some information from Houssiere
before writing the letter, that information was rudimentary and incomplete. Carol learned nothing
about the range of monthly retirement incomes to which she might be entitled and simply guessed
at a value in her letter. The information she received did not include how cost-of-living increases
are computed. Further, no one helped Carol put the trade-off in perspective, such as by
comparing the present value of estimated future retirement benefits to the $6,000.00 she sought
immediately from Charles. That the military retirement benefits were contingent and unliquidated
does not negate the absence of advice about their value to her, taking the qualities of contingency
and imprecision into consideration. We therefore determine that the evidence is both legally and
factually sufficient to support the court's finding that Carol lacked independent advice about the
nature, extent, and value of the parties' military retirement benefits.

 The trial court also found that Carol received inadequate consideration for waiving
her right to a portion of the retirement benefits. When she wrote the letter in 1991, Carol was
forty-six years old and Charles was fifty-three. The evidence showed that active duty military
personnel may retire after serving twenty years and that Charles is not eligible to retire until
September 1996. The trial court judicially noticed that for each year of active duty military
service, a member is entitled to two and one-half percent of his base pay. See 10 U.S.C.A.
§ 1401 (West Supp. 1996). Charles estimated that, when he became eligible to retire, his
retirement pay would be half his base pay. Neither party knew, of course, what Charles' base pay
would be when he retired.

 Charles argues that the retirement pay had no value when Carol wrote the letter
because Charles was not eligible for retirement then and nothing guaranteed that he would become
eligible. The probability of Charles' not becoming eligible, however, was only a factor to be
weighed with the potential benefits of receiving retirement income. While the amount of
retirement income is uncertain, Carol could receive a future stream of income payments beginning
at age fifty-one. These payments would support her in later years when her own earning capacity
might be expected to diminish. The evidence thus lends itself to weighing Carol's receipt of
$6,000.00 for one year against the probability of her receiving monthly payments for many future
years. The trial court's finding that $6,000.00 was inadequate consideration for waiving the right
to future retirement income is also supported by legally and factually sufficient evidence.

 Charles nevertheless argues that Carol controlled the terms of her offer and thereby
chose the consideration that she thought adequate. By the plain language of section 3.631(b),
however, the trial court, rather than either party, is given the responsibility to determine whether
the agreement is just and right. The court performed this duty in the manner in which it evaluated
the evidence.

 Because the two subsidiary findings discussed support the court's ultimate finding
that the exchange of Carol's right to retirement benefits for $6,000.00 was not just and right, we
need not review the evidence supporting the court's remaining subsidiary findings. J & J Equip.
Inc. v. Pilkinton, 850 S.W.2d 804, 806 (Tex. App.--Corpus Christi 1993, writ denied). Having
determined that the court properly found that any agreement incident to divorce was not just and
right, we hold that the trial court acted within its discretion in setting it aside and refusing to
approve and confirm it. See Harding, 461 S.W.2d at 237.

 Charles argues alternatively that the agreement was binding as a partition or
exchange agreement. Spouses are authorized to partition or exchange any of their community
property, whether then existing or to be acquired. § 5.52; Tex. Const. art. XVI, § 15. A
partition or exchange agreement must be in writing and signed by both parties. § 5.54. The trial
court concluded that any alleged agreement to exchange or partition the parties' interest in military
retirement benefits was not enforceable because it was not subscribed by both parties as required
by section 5.54.

 Charles argues that Carol's letter to him, coupled with his letter in response and
his payment of $6,000.00, constitutes an agreement to partition property. We reject the argument
that Charles' performance can be considered in determining whether Carol and Charles agreed to
partition the military retirement pay. The unambiguous language of section 5.54 that a partition
agreement "must be in writing and signed by both parties" precludes Charles' actions from
substituting for his signing a written document. See Collins v. Collins, 752 S.W.2d 636, 637
(Tex. App.--Fort Worth 1988, writ ref'd) (written memorandum of oral agreement, signed by party
to be charged, does not constitute written partition agreement).

 We also determine that Charles' and Carol's letters together do not form a written,
signed agreement. Carol wrote her letter asking for $500.00 a month on November 9, 1991. In
a letter to Carol dated November 22, 1991, Charles refers to a letter he had written her about one
week earlier and states, "I hope that you can respond and will write me and let me know if you
can live with the $300.00 to $350.00 per month." Charles then itemizes payments labelled
"December 1, 1991" and "December 15, 1991" that he proposed to make Carol; each payment
includes $340.00 with the notation "for yourself." Because Charles, in this letter, did not accept
the term of Carol's letter that he pay her $500.00 each month, we need not consider whether the
two letters together constitute a written, signed agreement to partition property. The trial court's
conclusion that any partition agreement did not comply with section 5.54 is correct. We therefore
overrule point one.

 In point of error two, Charles contests the trial court's conclusion that the military
retirement pay is community property. Charles first attacks the statement in conclusion of law
five that Charles' military retirement pay is community property "to the extent the same has
accumulated and vested." Charles points out that the court separately found that, when Carol
wrote the letter, no retirement benefits had vested in Charles. According to the evidence at trial,
Charles will not be eligible to retire until September 1996. Should he leave the service before
then, Charles would be entitled to no retirement benefits. Treating as an erroneous finding the
reference in conclusion five to military retirement benefits that had vested, we may disregard it
if the judgment is otherwise correct. Forty-Seven Thousand Two Hundred Dollars U.S. Currency
v. State, 883 S.W.2d 302, 309 (Tex. App.--El Paso 1994, writ denied). 

 The correctness of decreeing the retirement income to be community property does
not depend on whether it had already vested, in the sense of immediate entitlement. Military
retirement pay that is payable to a service member and acquired during marriage is community
property subject to division by the court. § 5.01(b); 10 U.S.C.A. § 1408(c) (West 1983 & Supp.
1996). Charles contends that the court's award of retirement benefits to the community is
incorrect because the benefits were his separate property under either the partition agreement or
the agreement incident to divorce. Having upheld the trial court's determination that neither
alleged agreement is valid, we see no error in the court's award. We overrule point two.

 In point of error three, Charles argues that the trial court erroneously shifted the
burden to him to prove that the agreement either was just and right under section 3.631 or was
not unconscionable under section 5.55 of the Family Code. §§ 3.631, 5.55. Charles bases his
argument on the wording of certain of the trial court's findings of fact. If a party deems findings
incorrect, he must request specified amended findings. James Holmes Enters., Inc. v. John
Bankston Constr. & Equip. Rental, Inc., 664 S.W.2d 832, 834 (Tex. App.--Beaumont 1983, writ
ref'd n.r.e.). See Tex. R. Civ. P. 298; Tex. R. App. P. 52(a). Because Charles failed to request
amended findings, he has waived his complaint as to the findings the court made. Law v. Law,
517 S.W.2d 379, 383 (Tex. Civ. App.--Austin 1974, writ dism'd). 

 Nevertheless, Carol bore the burden to prove that any agreement incident to divorce
was not just and right. § 3.631(b). See Temple Indep. Sch. Dist. v. English, 896 S.W.2d 167,
169 (Tex. 1995). The court worded its finding on whether Carol received independent advice in
terms of "no evidence," or a failure to find, that she received such advice. A failure to find a fact
is not an affirmative finding of the converse of that fact. Williford Energy Co. v. Submergible
Cable Servs., Inc., 895 S.W.2d 379, 383 (Tex. App.--Amarillo 1994, no writ); Gensco, Inc. v.
Canco Equip., Inc., 737 S.W.2d 345, 347-48 (Tex. App.--Amarillo 1987, no writ). But in view
of the court's ultimate finding that any agreement incident to divorce was not just and right, along
with its other affirmative findings, we construe the finding on advice so as to harmonize with the
court's obvious intent to affirmatively state why any agreement was not just and right. See Brown
v. Frontier Theatres, Inc., 369 S.W.2d 299, 301 (Tex. 1963); International Ins. Agency, Inc. v.
Railroad Comm'n, 893 S.W.2d 204, 211 (Tex. App.--Austin 1995, writ denied); First Fin. Dev.
Corp. v. Hughston, 797 S.W.2d 286, 294 (Tex. App.--Corpus Christi 1990, writ denied). We
therefore construe the finding of no evidence of advice as a finding that Carol lacked advice about
the nature, extent, and value of the retirement benefits.

 A partition agreement is not enforceable if the party against whom enforcement is
sought proves that, among other things, it is unconscionable. § 5.55. Because we determine that
the lack of a writing signed by both parties destroys the existence of a partition agreement, we will
not consider Charles' arguments on unconscionability. See § 5.54. We overrule point three.


 We affirm the trial court's decree. 



Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: August 14, 1996

Do Not Publish

1.   For convenience, we will cite to the Family Code by section number only.
2.   We have restated this finding to comport with our discussion below of Charles' point
of error three.


error two, Charles contests the trial court's conclusion that the military
retirement pay is community property. Charles first attacks the statement in conclusion of law
five that Charles' military retirement pay is community property "to the extent the same has
accumulated and vested." Charles points out that the court separately found that, when Carol
wrote the letter, no retirement benefits had vested in Charles. According to the evidence at trial,
Charles will not be eligible to retire until September 1996. Should he leave the service before
then, Charles would be entitled to no retirement benefits. Treating as an erroneous finding the
reference in conclusion five to military retirement benefits that had vested, we may disregard it
if the judgment is otherwise correct. Forty-Seven Thousand Two Hundred Dollars U.S. Currency
v. State, 883 S.W.2d 302, 309 (Tex. App.--El Paso 1994, writ denied). 

 The correctness of decreeing the retirement income to be community property does
not depend on whether it had already vested, in the sense of immediate entitlement. Military
retirement pay that is payable to a ser