TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00067-CV







Destec Energy, Inc., Destec Operating Company, Cogen Lyondell, Inc.,

and Lyondell Petrochemical Company, Appellants


v.



Houston Lighting & Power Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 96-02867, HONORABLE PETER M. LOWRY, JUDGE PRESIDING 






 Appellants Destec Energy, Inc., Destec Operating Company, Cogen Lyondell, Inc., and
Lyondell Petrochemical Company (collectively "appellants") challenge the trial-court judgment in favor of
Houston Lighting & Power Company ("HL&P"). The court ruled that appellants could not avoid the
requirement of obtaining a certificate of convenience and necessity ("CCN") before generating and
distributing electricity as planned. In seven points of error, appellants challenge various findings and
conclusions of the trial court. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 In 1994, Lyondell Petrochemical Company ("Lyondell") owned and operated a large
petrochemical plant in Channelview, Texas on the Houston Ship Channel. Lyondell bought its electric
power from HL&P. Destec Energy, Inc. ("Destec") and its subsidiary Cogen Lyondell, Inc. ("CLI")
owned and operated a nearby facility that generated electric power and sold it to various customers,
including to utilities for resale. At that time, Lyondell began considering the possibility of utilizing statutory
"self-use" and "cogeneration" exemptions by building an electric-power generation facility at its plant in an
effort to reduce electricity costs. See Tex. Util. Code Ann. ("Code") § 31.002(1)(F) (West 1997) (1)
(exempting certain types of operations from regulation as "public utilities"). Lyondell received a number
of proposals for constructing or leasing various facilities. In late 1994, Lyondell began negotiating with
Destec for the acquisition of a portion of the existing facility under Destec's control. After much
negotiation, Lyondell and CLI, a Destec subsidiary, formed the Channelview CoGen General Partnership
(the "Partnership") to sublease a portion of the facility from CLI.

 Unlike other proposals, this arrangement offered Lyondell an almost immediate source of
electricity, a much smaller capital outlay, and cost certainty. Lyondell's only major capital expense was
the acquisition of a right-of-way for, and construction of, a two-and-a-half-mile transmission line from the
facility to the plant. Under the Partnership Agreement, CLI owned an 88% interest in the Partnership,
while Lyondell owned a 12% interest. For all intents and purposes, CLI would manage the facility on
behalf of the Partnership for a fixed monthly fee. The partners would make monthly payments to cover
each partner's share of the fixed management fees and the variable operating, maintenance, and fuel costs. 
The Partnership would transfer electricity as an in-kind distribution to the partners Lyondell and CLI. CLI
agreed to indemnify Lyondell from most third-party, environmental, and other claims. The only purpose
of the Partnership was the generation of electricity for the partners. The only assets of the Partnership were
the sublease of the facility and the electricity generated.

 Shortly after the Partnership was formed, HL&P sued the Public Utility Commission
("PUC"), Destec, CLI, and Destec subsidiary Destec Operating Company for injunctive and declaratory
relief that the Partnership was required to obtain a CCN from the PUC before delivering electricity to
Lyondell and CLI. Lyondell intervened seeking a declaratory judgment that a CCN was not required. 
Following a two-day bench trial, the court rendered judgment declaring that CLI and Lyondell were
required to obtain a CCN before operating as planned. In essence, the trial court used two alternative
theories in deciding that the arrangement did not qualify for a CCN exemption. First, it ruled that, under
the circumstances, the transfer of electricity was in substance a retail sale of power, even if it took the
apparent form of a partnership distribution. Second, the trial court ruled that even if this was not a retail
sale, the transfer of electricity did not qualify under the self-use exception created in Code
§ 31.002(1)(F)(i). Destec, Destec Operating Company, CLI, and Lyondell perfected this appeal.


DISCUSSION

 The Code defines an "electric utility" as "a person . . . that owns or operates for
compensation in this state equipment or facilities to produce, generate, transmit, distribute, sell, or furnish
electricity in this state." Code § 31.002(1). Under the Code, a "person" includes a partnership. Code
§ 11.003(13). The Code requires an electric utility to obtain a CCN before rendering any service to the
public. Code § 37.051. However, a person or corporation that generates and furnishes electricity only
to itself is not considered an electric utility. Code § 31.002(1)(F)(i). Therefore, a partnership furnishing
electricity only to itself would not be required to obtain a CCN in order to operate.

 Appellants' first, second, and fifth points of error challenge the trial court's conclusion that
the arrangement in question does not qualify for the exemption from the requirement of obtaining a CCN
from the PUC. We review conclusions of law de novo. See University of Texas Law Sch. v. Texas
Legal Found., 958 S.W.2d 479, 481 (Tex. App.--Austin 1997, no pet.). The gist of appellants'
argument is that the Partnership was a valid partnership and that the delivery of electricity to the partners
was not a retail sale but merely a distribution of partnership assets to the partners. HL&P responds that,
irrespective of the form of the transaction, its substance was a retail sale, asserting in its brief that


(1) CLI continues to control and operate an existing power plant, as it has for several
years, and is responsible for providing all resources necessary for operations.


(2) Lyondell has no role in the management of the power plant or the "partnership" and
is indemnified from all liabilities arising from operation of the plant or from the
"partnership."


(3) During normal operations, Lyondell will receive and pay for only the power it needs,
up to 61.4MW of power, no matter how much power the power plant is actually
producing.


(4) Lyondell's only contributions to the "partnership" are four monthly payments, none
of which reflect the actual costs of operating the power plant.


(5) If the actual cost of making Lyondell's power is more or less than Lyondell's
payments, only CLI loses or gains.


(6) If Lyondell defaults, it loses nothing except its right to receive power.


(7) The "partnership" has no real assets or employees, does not accumulate assets or
debts and will distribute nothing upon termination; it is simply a shell through which
Lyondell's payments flow to CLI.


As support for this argument, HL&P cites United States v. Drum, 368 U.S. 370 (1962) (transaction
between trucking company and its employee-drivers was sale of transportation services, not self-use). 

 We agree that the substance of a transaction will generally control over its form for
regulatory purposes. See Henry S. Miller Co. v. Treo Enters., 585 S.W.2d 674, 676 (Tex. 1979). 
However, we need not address the intricacies of the present partnership arrangement because this appeal
can be decided on a simpler, more direct basis.

 In their fifth point of error, appellants contend the trial court erred by concluding that the
Partnership's distribution of electric power to its partners constitutes a transfer of electricity between
separate entities and therefore is not "self-use." Appellants support this contention by asserting that Code
§ 31.002(1)(F)(i) expressly authorizes partnerships to utilize the self-use exemption and that the "aggregate
theory" of partnership should apply to the distribution of power to the partners. Appellants argue that the
transfer of electricity by a partnership to its partners is merely a distribution that partners have a right to
receive as part of their ownership interest in the partnership.

 A partnership interest includes the right to receive distributions. Texas Revised Partnership
Act ("TRPA"), Tex. Rev. Civ. Stat. Ann. art. 6132b-1.01(13) (West Supp. 1998). (2) Distributions may
be a transfer of cash or other property. TRPA art. 6132b-1.01(5). Appellants contend that electricity is
an allowable form of such a distribution of property. See Madison Gas & Elec. Co. v. Commissioner
of Internal Revenue, 633 F.2d 512, 515 (7th Cir. 1980) (electricity distribution is an in-kind distribution). 
Appellants also contend that the "aggregate theory" of partnership is still utilized in TRPA in certain
circumstances and should be utilized here to determine that the distribution of electricity is not a transfer
between separate entities. We conclude, however, that appellants' argument does not overcome the clear
language of TRPA.

 TRPA declares that "a partnership is an entity distinct from its partners." TRPA art.
6132b-2.01. The published "Comment of Bar Committee" to this section states:


 TRPA unequivocally embraces the entity theory of partnership by specifically
stating in this section that a partnership is an entity distinct from its partners. This clear
statement is intended to allay previous concerns that stemmed from confusion as to
whether a partnership was an entity or an aggregate of its members. . . . Section 2.01
codifies the entity trend in the case law, e.g., Haney v. Fenley, Bate, Deaton and Porter,
618 S.W.2d 541 (Tex. 1981).


TRPA art. 6132b-2.01 cmt. (3) Despite this language, appellants suggest that the aggregate theory is still
utilized when "explicitly needed." See Steven Cooper, The Texas Revised Uniform Partnership Act and
the Texas Uniform Partnership Act: Some Significant Differences, 57 Tex. B.J. 828 (1994). That
article, however, states that such use would be mainly to ensure continued conduit taxation of the
partnership form and to recognize the existence of duties running among partners as well as from partners
to their partnerships. Id.

 Appellants also cite Lawler v. Dallas Statler Hilton Joint Venture, 793 S.W.2d 27 (Tex.
App.--Dallas 1990, writ denied), as an example of the type of case that demands use of the aggregate
theory. In Lawler, the court refused to apply the entity theory to a workers' compensation case, holding
instead that employees of a partnership could sue individual partners as employers in addition to the
partnership itself. Id. at 34. That case, however, was decided under the now-repealed Texas Uniform
Partnership Act rather than TRPA. Moreover, even in Lawler, the court noted that the entity theory of
partnerships is followed for most purposes, being especially reflected in four areas: property, creditors'
rights, responsibility, and continuity. Id. at 33. TRPA is even more direct in applying the entity theory. 
See TRPA, art. 6132b-2.01.

 In addition, TRPA unequivocally provides that partnership property is not owned by
individual partners: "Partnership property is not property of the partners. Neither a partner nor a partner's
spouse has an interest in partnership property." TRPA art. 6132b-2.04. The comment to this section
states: "This is a clarifying statement intended to eliminate any confusion that may have existed under [the
Texas Uniform Partnership Act] as a result of its combination of the aggregate and entity concepts of
partnerships." TRPA art. 6132b-2.04 cmt. The self-use exception of the Code applies if a partnership
furnishes electricity only to itself. Here, however, the Partnership is furnishing electricity to its partners, who
are distinct from the Partnership. Appellants present no reason why we should ignore the entity theory to
meet its suggested standard of "explicit need." We hold that, under the present circumstances, when
electricity moves from the Partnership to the partners, the electricity is not being furnished to the Partnership
itself; rather, it is moving between distinct, separate entities. (4) We overrule point of error five.

 In points of error one and two, appellants challenge the trial court's conclusion that the
arrangement in question is a retail sale. To be exempt from the CCN requirement, the Partnership would
have to show both that its distributions were for self-use and that the arrangement was not a retail sale. See
Code § 31.002(1)(F)(i); 16 T.A.C. § 23.31(c)(1)(E) (1997). Because of our disposition of point of error
five, we need not decide the retail sale issue.

 In their third point of error, appellants contend the trial court improperly considered the
alleged adverse effect a decision that the Partnership was not regulated by the Code would have on HL&P
and third parties. The findings of fact in question state:


58. HL&P has numerous industrial customers, many of whom occupy sites in close
proximity to each other along the Houston Ship Channel, in the Bayport area and near
Freeport, Texas.


59. Several of these customers have existing cogeneration plants and occupy sites that
adjoin the plant sites of other HL&P industrial customers.


60. If the transaction in this case were held to be exempt from PUC regulation under the
self-service exception provided by PURA, then any user of electricity, including other
customers of HL&P, could enter into arrangements with owners of cogeneration
facilities and obtain their power from these non-regulated entities. Such de facto
deregulation, if it is to come, should be effected by the Legislature.



In the body of this point of error, appellants assert that the trial court improperly considered this adverse
effect on HL&P in deciding whether the Partnership met the statutory requirements for formation. In
reviewing the record, however, we find that consideration of this adverse effect goes to the interpretation
of the Code provisions in question, not to whether the Partnership met the requirements of partnership
formation under the TRPA. "In construing a statute, whether or not the statute is considered ambiguous
on its face, a court may consider among other matters the: . . .(5) consequences of a particular
construction." Code Construction Act, Tex. Gov't. Code Ann. § 311.023 (West 1988). The trial court
was well within its discretion in considering the effect on third parties and HL&P as consequences of its
construction of the self-use exception in the Code.

 Appellants further contend the trial court's findings are erroneous because no evidence
supports them. In reviewing a no-evidence complaint, we consider only the evidence favorable to the
verdict and disregard all contrary evidence. Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458
(Tex. 1992); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). If there is more than a scintilla of
evidence to support a finding, a no-evidence challenge must fail. Texarkana Memorial Hosp. v.
Murdock, 946 S.W.2d 836, 838 (Tex. 1997).

 In the present case, HL&P points to testimony by Steve Schaefer and Dr. Joe Pace to
support the challenged findings. At trial, Schaefer's testimony encompassed the essence of the findings
above, including his opinion that when customers have adjacent plant sites, constructing facilities and
transmission lines between them would be practical and facilitated. Pace testified that many people would
want to take advantage of such an arrangement. Two exhibits admitted into evidence also support these
findings. We hold that the record contains more than a scintilla of evidence to support the findings. Point
of error three is overruled.

 Point of error four asserts that finding of fact sixty (quoted above) is erroneous because,
in using the term "de facto deregulation," it assumes that all generation and furnishing of electricity in Texas
is governed by PUC regulation. Appellants point out that specific instances of exemption from PUC
regulation already exist, such as partnerships which furnish electricity to themselves. We do not read such
an absolute assumption into this finding of fact. The gist of the finding appears to be merely that if the CCN
exemption is as broad as appellants would have it and the arrangement in question is allowed, many more
people will take advantage of the exemption and be outside of PUC regulation. As we held above, this
statement is supported by evidence presented at trial. We overrule point of error four.

 In point of error six, appellants challenge conclusion of law eight, which states:


Even if the Arrangement were not in substance a retail sale, . . . the Arrangement would
not constitute self-service by Lyondell within the meaning of § 2.0011(1)(A) of PURA 95
[Code § 31.002(1)(F)(i)] because some of the power that Lyondell claims to own would
be sold or used by others in contravention of the requirements of § 2.0011(1)(A).


The referenced subsection of the Code states that a person is not considered a "public utility" when it
furnishes electricity only to itself and when such electricity "is not resold to or used by others." Code §
31.002(1)(F)(i) (emphasis added). Appellants argue that the legislative history of the statute reveals that
the resale prohibition does not include wholesale resale or sales of electricity back to utility companies. See
House Comm. on State Affairs, Bill Analysis, Tex. S.B. 605, 67th Legis., R.S. (1981). While the
legislative history may indicate the desirability of allowing such sales, that exception was not written into
section 31.002(1)(F)(i). That subsection prohibits others from using the electricity that a partnership
furnishes to itself. Under this subsection, such a person cannot even give electricity away, let alone sell it
at a reduced or wholesale rate. A court may not add its own special exceptions into a statute. See Public
Util. Comm'n v. Cofer, 754 S.W.2d 121, 124 (Tex. 1988). Thus, we will not add a wholesale sale
exception to the prohibition of resale or use by others in section 31.002(1)(F)(i).

 Appellants also rely on section 31.002(1)(F)(ii), which exempts the generation of electric
power that goes to an electric utility if the generation is used primarily for the person's own consumption. 
Appellants assert that Lyondell has a partnership interest in the Partnership, that the Partnership operates
a qualifying facility that sells surplus power to electric utilities, and that the electric power distributed to
Lyondell will be used primarily for Lyondell's consumption. As discussed above, however, this ignores
the principle that a partnership is an entity distinct from its partners. TRPA art. 6132b-2.01. In the present
case that means the partners' consumption of electricity is not the equivalent of consumption by the
Partnership, and Partnership generation of electricity is distinct from generation of electricity by the partners. 
Therefore, Code § 31.002(1)(F)(ii) exempts neither Lyondell nor the Partnership. We overrule point of
error six.

 In point of error seven, appellants argue that the trial court erred by finding that CLI and
Lyondell agreed to terminate the Partnership if a court determined that a CCN was required for the
Partnership's distribution of electricity to its partners. (5) Appellants contend there is no evidence that the
parties made such an agreement. In the Partnership Agreement, CLI and Lyondell agreed that several
events would require winding up, including a court determination that a CCN was required, unless both
partners agree to appeal such order. Appellants argue that because they have appealed the trial court's
decision, the admitted agreement to wind up the partnership has not yet become effective. We agree that
the finding of fact is incomplete in that it does not state when the agreement to wind up becomes effective. 
Nonetheless, this defect is harmless in the present context. Despite even a wholly erroneous finding of fact,
if a judgment is otherwise correct on the merits, the judgment will be upheld. $47,200.00 v. State, 883
S.W.2d 302, 309 (Tex. App.--El Paso 1994, writ denied); City of San Antonio v. Lopez, 754 S.W.2d
749, 753 (Tex. App.--San Antonio 1988, writ denied). Here, the finding of fact may be somewhat
misleading in that the exception to the agreement to wind up was not noted therein, but even without the
finding there is ample support for the judgment. Point of error seven is overruled.


CONCLUSION

 Because the trial court's judgment is supported by the conclusion that an in-kind distribution
of electricity from a partnership to its partners is not the same as a partnership's furnishing electricity to
itself, we overrule appellants' points of error and affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: April 2, 1998

Publish

1. The present case was tried, and the appellate briefs were filed, before September 1, 1997, when
the Utilities Code replaced the Public Util. Regulatory Act of 1995, 74th Leg., R.S., ch. 9, § 1, 1995 Tex.
Gen. Laws 31 (Tex. Rev. Civ. Stat. Ann. art. 1446c-0, since repealed and recodified). However, because
the codification of the Public Util. Regulatory Act into the Utilities Code was a nonsubstantive codification,
see Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 10, 1997 Tex. Gen. Laws 713, 1018, we will cite
to the Utilities Code for convenience.
2. TRPA currently applies to any partnership formed on or after January 1, 1994, which includes the
Partnership in the present case. TRPA art. 6132b-11.03(a)(1). After December 31, 1998, TRPA applies
to all partnerships, irrespective of formation date. TRPA art. 6132b-11.03(c).
3. The published comments, prepared by a committee of the State Bar of Texas, are virtually identical
to the bill analysis presented to the 1993 legislature for its use in considering the bill enacting TRPA. See
introductory comment preceding TRPA art. 6132b-1.01. In construing the statute, we consider the
comments persuasive though certainly not binding.
4. We are not persuaded by Op. Tex. Att'y Gen. No. MW-45 (1979) (partnership is supplying
electricity to itself when supplying electricity to its partners' plants). That opinion was written before the
enactment of TRPA and, in any event, is not binding on this Court. Holmes v. Morales, 924 S.W.2d 920,
924 (Tex. 1996).
5. TRPA uses the term "winding up" of a partnership rather than "termination" or "dissolution." TRPA
art. 6132b-8.01. The comment to that section states that the term "dissolution" was not used because its
use had caused confusion in that "dissolution" was used to indicate the termination of the partnership; the
term "winding up" is used to indicate "the beginning of the period during which the normal partnership
business may no longer be conducted and the partners must begin the process of liquidating the partnership
assets." TRPA art. 6132b-8.01 cmt.


 means the partners' consumption of electricity is not the equivalent of consumption by the
Partnership, and Partnership generation of electricity is distinct from generation of electricity by the partners. 
Therefore, Code § 31.002(1)(F)(ii) exempts neither Lyondell nor the Partnership. We overrule point of
error six.

 In point of error seven, appellants argue that the trial court erred by finding that CLI and
Lyondell agreed to terminate the Partnership if a court determined that a CCN was required for the
Partnership's distribution of electricity to its partners. (5) Appellants contend there is no evidence that the
parties made such an agreement. In the Partnership Agreement, CLI and Lyondell agreed that several
events would require winding up, including a court determination that a CCN was required, unless both
partners agree to appeal such order. Appellants argue that because they have appealed the trial court's
decision, the admitted agreement to wind up the partnership has not yet become effective. We agree that
the finding of fact is incomplete in that it does not state when the agreement to wind up becomes effective. 
Nonetheless, this defect is harmless in the present context. Despite even a wholly erroneous finding of fact,
if a judgment is otherwise correct on the merits, the judgment will be upheld. $47,200.00 v. State, 883
S.W.2d 302, 309 (Tex. App.--El Paso 1994, writ denied); City of San Antonio v. Lopez, 754 S.W.2d
749, 753 (Tex. App.--San Antonio 1988, writ denied). Here, the finding of fact may be somewhat
misleading in that the exception to the agreement to wind up was not noted therein, but even without the
finding there is ample support for the judgment. Point of error seven is overruled.


CONCLUSION

 Because the trial court's judgment is supported by the conclusion that an in-kind distribution
of electricity from a partnership to its partners is not the same as a partnership's furnishing electricity to
itself, we overrule appellants' points of error and affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: April 2, 1998

Publish

1. The present case was tried, and the appellate briefs were filed, before September 1, 1997, when
the Utilities Code replaced the Public Util. Regulatory Act of 1995, 74th Leg., R.S., ch. 9, § 1, 1995 Tex.
Gen. Laws 31 (Tex. Rev. Civ. Stat. Ann. art. 1446c-0, since repealed and recodi