COURT OF
APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

NO. 2-09-098-CV

 

 

REZA
 VAFAIYAN                                                                               APPELLANT

 

V.

 

THE
 STATE OF TEXAS                                                                        
 
 APPELLEE

 

------------

 

FROM THE 30TH
DISTRICT COURT OF WICHITA
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

 

I.  Introduction

 

          Appellant Reza Vafaiyan,
appearing pro se, appeals the trial court’s order granting Appellee The State
of Texas’s motion for summary judgment for forfeiture of United States currency
totaling $381, 244.75; a 2000 Pontiac Grand Am; a 2001 Ford pickup truck; and
the proceeds from the sale of the real property located at 2900
Kyle Cove in Wichita Falls.  In seventeen
issues,[2] Vafaiyan argues that the
trial court abused its discretion by ordering that the preceding list of items
be forfeited to the State, by denying his motion to recuse Judge Price, by
denying his motion for a hearing on his motion challenging the seizure of his
home, by granting the State’s motion to sell his home, by failing to make findings
of fact and conclusions of law, by consolidating the five forfeiture cases, by
denying his motion for continuance, by sustaining the State’s objections to his
supplemental response, by granting the State’s motion for summary judgment, and
by denying his motion for reconsideration. 
We will affirm.

II.  Brief Factual
and Procedural Background[3]

          According
to the State’s motion for summary judgment, “[f]or a period of at least four
years, Reza Vafaiyan . . . plagued the Wichita Falls, Texas, community by supplying
individuals with a capacious amount of chemicals used in the illegal manufacture
of methamphetamine.”  In April 2004, the
State filed a notice of seizure and intended forfeiture of United States
currency totaling $2,452.00. Thereafter, the State filed four additional cases involving
additional currency, vehicles, and Vafaiyan’s house.[4]  In August 2008, the State filed a motion to
consolidate all five of the forfeiture cases that were pending against Vafaiyan
and filed a consolidated motion for summary judgment on all of the cases.  Vafaiyan filed a pro se response, claiming
that he was representing himself in the forfeiture case involving his house,
and his attorney filed a response for all of the forfeiture cases, including
the forfeiture case involving Vafaiyan’s house.[5]  The State thereafter filed a motion objecting
to improper summary judgment evidence included in the summary judgment responses.
 The trial court sustained the State’s
objections and granted the State’s motion for summary judgment, ordering a
final judgment of forfeiture in favor of the State of Texas as to the $2,452.00
in United States currency; the $200,382.62 in United States currency; the
$178,410.13 in United States currency; the 2000 Red Pontiac Four Door; the 2001
Maroon Ford F-150 Pick-up; and the proceeds from the sale of the real property
located at 2900 Kyle Cove. 

          Following
the trial court’s final judgment on forfeiture, Vafaiyan filed a motion for
reconsideration, rehearing, and new trial, as well as an amended motion for reconsideration
and new trial.  The trial court denied
these motions, and this appeal followed. 

III.  Standard of Review

          Because
a majority of the issues that Vafaiyan raises are reviewed under an abuse of
discretion standard, we set forth that standard here.  To determine whether a
trial court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Low v. Henry, 221 S.W.3d 609,
614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838–39 (Tex.
2004).  An appellate court cannot
conclude that a trial court abused its discretion merely because the appellate
court would have ruled differently in the same circumstances.  E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 558 (Tex. 1995); see also Low, 221 S.W.3d
at 620.

          An
abuse of discretion does not occur when the trial court bases its decisions on
conflicting evidence.  In re Barber,
982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court’s decision.  Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).

IV.  Motion to
Recuse Was Moot and Bias Was Not Shown

          In
his first issue, Vafaiyan argues that the trial court abused its discretion by
denying his motion to recuse Judge Mark Price from presiding on the forfeiture case
involving Vafaiyan’s house.  Specifically, Vafaiyan argues that Judge Price
“served as a lawyer with [the] City Attorney in the matter in controversy and
his association with City Att. who ‘threatened me out of city broke.’”  In his third issue, Vafaiyan argues that the
trial court abused its discretion by denying his motion to sanction the
district attorney for fraud, his motion to dismiss, his motion to stay, and his
motion to lease his house.  Vafaiyan
claims that the denial of his motions proves that Judge Price was biased in
favor of the State.[6]
 Because both of these issues relate to
Vafaiyan’s arguments regarding Judge Price, we will analyze them together.

          The denial of a motion to recuse is reviewed under an abuse
of discretion standard on appeal.  See
Tex. R. Civ. P. 18a(f).  The Texas
Supreme Court has stated,

‘[J]udicial rulings alone almost never
constitute a valid basis for a bias or partiality motion,’ and opinions the
judge forms during a trial do not necessitate recusal ‘unless they display a
deep-seated favoritism or antagonism that would make fair judgment
impossible.  Thus, judicial remarks
during the course of a trial that are critical or disapproving of, or even
hostile to, counsel, the parties, or their cases, ordinarily do not support a
bias or partiality challenge.’

 

Dow Chem. Co. v. Francis,
46 S.W.3d 237, 240–41 (Tex. 2001) (quoting Liteky v. United States, 510
U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)). 
Furthermore, expressions of impatience, dissatisfaction, annoyance, and
even anger do not establish bias or partiality. 
Id. at 240.  “A judge’s
ordinary efforts at courtroom administration—even a stern and short-tempered
judge’s ordinary efforts at courtroom administration—remain immune.”  Id. (quoting Liteky, 510 U.S.
at 556, 114 S. Ct. at 1147).

          Here,
the record reflects that although Judge Price was initially assigned to the forfeiture
case relating to Vafaiyan’s house on Kyle Cove, the State filed a motion to
consolidate all of the forfeiture cases, and Judge Brotherton presided over the
forfeiture cases after they were consolidated.  Because Judge Price did not preside over
Vafaiyan’s forfeiture cases, we hold that Vafaiyan’s issue relating to his
motion to recuse Judge Price is moot. See
Bailey v. State, No. 03-09-00276-CR, 2010 WL 2428085, at *2 (Tex.
App.––Austin June 18, 2010, pet. filed) (mem. op., not designated for
publication) (holding that appellant’s motion to recuse became moot when his
trial was conducted by a visiting judge, rather than the judge appellant sought
to recuse).  We therefore overrule
Vafaiyan’s first issue.  Moreover,
because judicial rulings alone do not constitute a basis for a bias, we hold
that Judge Price’s rulings on Vafaiyan’s motions do not constitute bias and that
no abuse of discretion has been shown.[7]  

 

We overrule Vafaiyan’s third issue.[8]  

V. 
Consolidation Was Not An Abuse of Discretion

          In
his fifth issue, Vafaiyan argues that the trial court abused its discretion by
consolidating the five forfeiture cases into one.  Vafaiyan argues that the consolidation was in
violation of Texas Rule of Civil Procedure 174 because it “prejudiced” him
since the cases were “all different in facts and circumstances, time[,] date,
[and] witnesses.”[9]


          We
review the trial court’s decision to consolidate under an abuse of discretion
standard.  See Owens-Corning Fiberglas Corp. v. Martin, 942 S.W.2d 712, 715
(Tex. App.––Dallas 1997, no writ).  Texas
Rule of Civil Procedure 174 governs the consolidation of actions.  Tex. R. Civ. P. 174.  Rule 174(a) provides,

When actions involving a common question of
law or fact are pending before the court, it may order a joint hearing or trial
of any or all the matters in issue in the actions; it may order all the actions
consolidated; and it may make such orders concerning proceedings therein as may
tend to avoid unnecessary costs or delay.

 

Tex. R. Civ. P. 174(a).  Rule 174 gives the trial court broad
discretion to consolidate cases with common issues of law or fact.  See
Martin, 942 S.W.2d at 716.  However,
if “all of the facts and circumstances of the case unquestionably require a
separate trial to prevent manifest injustice, and there is no fact or
circumstance supporting or tending to support a contrary conclusion,” the trial
court does not have any discretion to order consolidation.  Womack
v. Berry, 156 Tex. 44, 51, 291 S.W.2d 677, 683 (1956).

          The
trial court may consolidate actions that relate to substantially the same
transaction, occurrence, subject matter, or question.  See
Martin, 942 S.W.2d at 716.  The
actions should be so related that the evidence presented will be material,
relevant, and admissible in each case.  Id. 
In deciding whether to consolidate, the trial court must balance the
judicial economy and convenience that may be gained by the consolidation
against the risk of an unfair outcome because of prejudice or jury confusion.  Id.

          Even if the cases share
common questions of law and fact, an abuse of discretion may be found if the
consolidation results in prejudice to the complaining party.  Id.  However, we may not presume prejudice; it
must be demonstrated.  Id. 
Where the record does not reveal actual prejudice, the consolidation
does not provide a basis for reversal.  Id.

          Here, the record reveals
that the two vehicles, the home, and the sums of money were seized because they
were all related to Vafaiyan’s sale of pseudoephedrine to methamphetamine
makers.  That overall scheme connected
the items, even though they were seized at different times.  Moreover, Vafaiyan does not demonstrate how
he was prejudiced by the consolidation of the cases.  He argues that having four counsel in one
case creates “great confusion for parties, counsel[], [and] juries and
ultimately prejudices [him] where the State is attempting to strip [him] out of
30 years[’] life saving[s].”  This case,
however, was not tried to a jury, and the record does not reflect that the
trial court was confused by the various counsel or by the different facts and
circumstances, nor does the record reflect that Vafaiyan was prejudiced.[10]  An unfavorable decision, by itself, is not
evidence of prejudice.  See id. (stating that we cannot presume
prejudice).  We cannot say that the trial
court here acted without reference to any guiding rules or principles or acted
in an arbitrary and unreasonable manner by consolidating the forfeiture cases
under rule 174.  See Tex. R. Civ. P. 174.  We
therefore hold that the trial court did not abuse its discretion by
consolidating the five forfeiture cases involved in this appeal.  See
Martin, 942 S.W.2d at 719 (holding that trial court did not abuse its
discretion by consolidating asbestos-exposure cases).  We overrule Vafaiyan’s fifth issue.

VI.  Denying
Continuance Was Not An Abuse of Discretion

          In
his seventh issue, Vafaiyan argues that the trial court abused its discretion
by refusing to compel the State to produce thirteen items “necessary to respond
to the [S]tate[’s] motion for [summary judgment]” and by failing to follow
166a(g).[11]
 Specifically, Vafaiyan complains that
the trial court abused its discretion when it denied his motion for continuance,
in which he requested an additional thirty days after the requested documents
were received, to respond to the State’s motion for summary judgment. 

          We review a trial court’s ruling on a motion for
continuance for an abuse of discretion.  See
BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex.
2002).  The trial court’s ruling
denying a motion for continuance will not be disturbed unless a clear abuse of
discretion is evident in the record.  See  Barron v. Vanier, 190 S.W.3d 841, 847
(Tex. App.—Fort Worth 2006, no pet.) (op. on reh’g).  If the appellant provides no record of the
evidence presented to the trial court, we must presume that the evidence
supports the ruling.  See Green v.
Kaposta, 152 S.W.3d 839, 842 (Tex. App.—Dallas 2005, no pet.).

A litigant who fails to
diligently use the rules of civil procedure for discovery purposes is not
entitled to a continuance.  State v.
Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988).  In deciding whether a trial court abused its
discretion by denying a motion for continuance seeking additional time to
conduct discovery, we consider factors such as the length of time the case has
been on file, the materiality and purpose of the discovery sought, and whether
the party seeking the continuance has exercised due diligence to obtain the
discovery sought.  Joe
v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 161 (Tex. 2004).    

Here, the record reveals
that the State filed its notice of seizure and intended forfeiture in April
2004 and that the forfeiture cases were consolidated on August 4, 2008.  Also on August 4, 2008, the State filed its
motion for summary judgment.  Two weeks
later, Vafaiyan’s attorney filed his first motion for continuance, and that same
day, the trial court granted a continuance until October 29, 2008.  On August 27, 2008, Vafaiyan, proceeding pro
se, filed a motion for continuance, requesting ninety days to respond to the
State’s motion for summary judgment, but there is no ruling on this motion in
the record before us.  On October 24,
2008, Vafaiyan’s attorney filed his second motion requesting a continuance
until November 29, 2008.  On October 27,
2008, Vafaiyan, acting pro se, filed a motion requesting that the summary
judgment be “dismissed” or alternatively that he be granted a ninety-day
continuance.  That same day, the trial
court granted a continuance until November 29, 2008.  On November 21, 2008, Vafaiyan’s attorney
filed his third motion requesting a continuance until January 29, 2009, because
“[t]here are hundreds of pages of exhibits,” “[i]t has taken hours to go
through these exhibits,” and “[t]he effort to obtain discovery [because his
client was in the penitentiary] has proven most difficult.”  Without receiving an explicit ruling on the
third motion for continuance, on January 29, 2009, Vafaiyan’s counsel filed a
response to the State’s motion for summary judgment,[12] and Vafaiyan filed his
“Pre Production Respon[se] To State[’s] Motion For Summary Judgment And Motion
For Continuance Till Requested Production, Discovery Obtained.”  The trial court thereafter denied Vafaiyan’s
request for an additional continuance. 

          In
summary, the record demonstrates that the initial case had been on file for
over four years before the State filed its motion for summary judgment; that
Vafaiyan had been granted multiple continuances; that Vafaiyan’s attorney was
able to file a response to the State’s motion for summary judgment on January
29, 2009, despite Vafaiyan’s claims that additional evidence was needed to
prove that the property had been obtained legally; that Vafaiyan himself was
able to file a response; and that the trial court did not consider the motion
and responses until February 24, 2009.  Moreover, Vafaiyan’s motion complained that he
had requested the documents from the State in September 2008, but he did not
explain his failure to make diligent efforts to secure such discovery since
2004 when the initial case was filed.  Because all of the pertinent factors weigh in
favor of the State, we hold that the trial court acted within its discretion by
denying Vafaiyan’s motion for continuance. 
See Two Thirty Nine Joint Venture, 145 S.W.3d at 161
(listing factors); Duerr v. Brown,
262 S.W.3d 63, 79 (Tex. App.––Houston [14th Dist.] 2008, no pet.) (holding that
one year was sufficient time for discovery and concluding that all factors
weighed in favor of denying continuance). 
We overrule Vafaiyan’s seventh issue.

VII.  No Abuse of Discretion
Shown by Denying Vafaiyan’s 

Motion For Leave To File Untimely Supplemental Response

 

          In
his eighth issue, Vafaiyan argues that the trial court abused its discretion by
sustaining the State’s objections to his untimely supplemental response and by
granting summary judgment for the State.[13]  Vafaiyan contends that TDCJ rules prevented
him from obtaining a stamp to mail his supplemental response and that this
constituted “excusable neglect,” not conscious indifference.  

          In
a summary judgment proceeding, the nonmoving party may file and serve opposing
affidavits or other written responses no later than seven days prior to the
scheduled hearing.[14]  Tex. R. Civ. P. 166a(c).  Only with the trial court’s permission may
the nonmoving party file summary judgment evidence past the seven-day
deadline.  See id.  We review a trial
court’s ruling on a motion for leave to file a late summary judgment response
for an abuse of discretion.  Carpenter v. Cimarron Hydrocarbons Corp.,
98 S.W.3d 682, 686 (Tex. 2002); McClure
v. Denham, 162 S.W.3d 346, 349 (Tex. App.––Fort Worth 2005, no pet.).

          Here,
as noted above, the State filed its motion for summary judgment on August 4,
2008.  Within that motion, the State gave
notice that their motion would be submitted to the trial court for
consideration without a hearing on August 29, 2008 at 5:00 p.m.  Thereafter, as noted above, Vafaiyan and his
attorney filed multiple motions for continuance and ultimately filed their
responses on January 29, 2009.  On
February 2 and February 4, 2009, the attorneys signed a Rule 11 Agreement, agreeing
that the State had until 5:00 p.m. on February 17, 2009, to file a reply to
Vafaiyan’s summary judgment response and stating that the new final submission
date for the motion for summary judgment would be extended until 5:00 p.m. on
February 23, 2009.[15]  

On February 11, 2009,
Vafaiyan filed a “Motion For Continuance And Request [for] Leave To Amend The
Response To The State[’s] Motion For Summary Judgment,” in which Vafaiyan
stated that “[l]ately” he had received evidence that supported his summary
judgment response and that he wished to amend his previous response to incorporate
the “new evidence.”  On February 17,
2009, the trial court denied Vafaiyan’s motion for continuance and leave to
amend his response.  Vafaiyan thereafter
placed his supplemental response in the TDCJ mail on February 20, 2009, but it
was not received by and filed with the trial court until February 26, 2009.  As noted above, the trial court considered the
motion for summary judgment and response on February 24, 2009.  The State filed objections to Vafaiyan’s
supplemental response, and the trial court sustained the State’s objections. 

          Based
on the foregoing, Vafaiyan failed to obtain the trial court’s permission, as
required by rule 166a(c), to file his response. 
Thus, we interpret Vafaiyan’s argument to be that the trial court erred
by denying his motion for leave to supplement his response.  Yet, Vafaiyan’s motion for leave does not specify
when he received the “new evidence,” what the “new evidence” consisted of,
where the “new evidence” came from (though it intimates that it was not from
the State), and why he could not have obtained the “new evidence” prior to the
time his initial response was filed.  Because Vafaiyan did not show why his failure
to timely supplement was not intentional or the result of conscious
indifference, see Carpenter, 98 S.W.3d at 688, we hold that the
trial court did not abuse its discretion by denying Vafaiyan’s motion for leave
to supplement his summary judgment response. 
See McClure, 162 S.W.3d at 349
(holding that trial court did not abuse its discretion by overruling
appellant’s motion for leave to file supplemental evidence because appellant
did not show that his failure to timely produce affidavit was not intentional
or the result of conscious indifference). 
We overrule this portion of Vafaiyan’s eighth issue.

VIII.  Summary
Judgment for the State Was Proper

          In
the remainder of his eighth issue and in issues six, eleven, twelve, thirteen,
fourteen, fifteen, fifteen A, and sixteen, Vafaiyan challenges whether the
trial court’s grant of summary judgment forfeiting his assets in favor of the
State was proper.  Specifically, Vafaiyan
argues that there was no probable cause to seize the property, that the search
affidavits were based on hearsay, that all of the seizures were therefore
illegal, and that the State failed to show a nexus between the property that
was forfeited and any criminal activity. 

          A.      Law
on Forfeiture

          Chapter 59 of the Texas Code of Criminal Procedure
prescribes the procedures governing civil forfeiture, which is an in rem
proceeding against contraband.  State
v. Silver Chevrolet Pickup, 140 S.W.3d 691, 692–93 (Tex. 2004); Hardy v.
State, 102 S.W.3d 123, 126–27 (Tex. 2003). 
Under chapter 59, property, including currency, that has been used in
the commission of a felony or that constitutes proceeds gained from the
commission of a felony in violation of Chapter 481 of the Texas Health and
Safety Code (the Texas Controlled Substances Act) is contraband subject to
forfeiture.  Tex. Code Crim. Proc. Ann.
art. 59.01(2) (A)–(D) (Vernon Supp. 2009); Real Prop. Located at 4125
Blanton, Wichita Falls v. State, 230 S.W.3d 476, 481 (Tex. App.—Fort Worth
2007, pet. denied).  

          In
a Chapter 59 forfeiture hearing, the trial court must first determine whether
the property in question is indeed “contraband” as defined by the statute.  Tex. Code Crim. Proc. Ann. arts. 59.01(2)
(Vernon Supp. 2009), 59.05 (Vernon 2006); 1996 Cadillac & 2002 Lincoln
Autos. v. State, No. 02-07-00017-CV, 2008 WL 163552, at *4 (Tex. App.—Fort
Worth Jan. 17, 2008, no pet.) (mem. op.). The State must establish, by a
preponderance of the evidence, a substantial nexus or connection between the
property to be forfeited and the statutorily defined criminal activity.  State v. $11,014.00, 820 S.W.2d
783, 785 (Tex. 1991); Forty-Seven Thousand Two Hundred Dollars U.S. Currency
v. State, 883 S.W.2d 302, 306 (Tex. App.—El Paso 1994, writ denied); 1996
Cadillac & 2002 Lincoln Autos., 2008 WL 163552, at *4.  Thus, the State must prove, considering all
the evidence, that it is more reasonably probable than not that the seized
property was either intended for use in, or derived from, a violation of the
offenses enumerated in the forfeiture statute. 
$9,050.00 in U.S. Currency v. State, 874 S.W.2d 158, 161 (Tex.
App.—Houston [14th Dist.] 1994, writ denied). 


          The
State may prove the required substantial nexus through circumstantial
evidence.  $11,014.00, 820 S.W.2d
at 785.  When relying on circumstantial
evidence, the State must offer evidence that raises more than a mere surmise or
suspicion regarding the source of the property or money.  Id. 
However, the State is not required to exclude every possible means by
which a person may have acquired the seized property. $7,058.84 in U.S.
Currency v. State, 30 S.W.3d 580, 586 (Tex. App.—Texarkana 2000, no pet.); Four
Thousand One Hundred Eighty-Two Dollars in U.S. Currency v. State, 944
S.W.2d 24, 27 (Tex. App.—Texarkana 1997, no writ).  The trial court may draw any and all
reasonable inferences from the circumstances shown by the evidence. $7,058.84,
30 S.W.3d at 586.

B.      The $2,452.00 and the $200,382.62 in U.S.
Currency

In his twelfth issue,
Vafaiyan argues that the trial court erred by ordering the forfeiture of
$2,452.00 in currency.  In issue fifteen
A, Vafaiyan argues that the trial court erred by ordering the forfeiture of
$200,382.62 that was located in a safety deposit box. 

The record contains the
affidavit of Bobby Dilbeck, an investigator with the Drug Enforcement Division
of the Wichita County District Attorney’s Office, who averred the following:

3. 
In March of 2004, I was involved in an investigation into the activities
of Reza Vafaiyan, a/k/a Gholamereza Vafaiyan (“Vafaiyan”).  On March 22, 2004, Task Force officers,
including myself, John Spragins, Chris Taylor, and Jim Whitehead were
conducting surveillance on the Walgreens store at the intersection of Kemp and
Southwest Parkway in Wichita Falls, Texas. 
Employees of that business had called law enforcement on numerous
occasions to identify subjects purchasing large amounts of pseudoephedrine.  On March 22, 2004, Walgreens employees
contacted officers and gave the description of a male subject who had just
purchased two boxes of pseudoephedrine tablets. 
During the surveillance, officers observed that this individual was
Vafaiyan, an individual who officers recognized and knew owned a convenience
store business named Krystal Mart in Wichita Falls, Texas, and observed
Vafaiyan exit the store and enter a red Pontiac Grand Am vehicle.  I knew that an investigation was pending with
the U.S. Drug Enforcement Administration (“DEA”) regarding Vafaiyan’s purchase
of and resell of various chemicals used in the manufacture of methamphetamine,
including pseudoephedrine.  After
Vafaiyan left the Walgreens store, officers followed him to another Walgreens
store located in Wichita Falls, Texas. 
Officers observed Vafaiyan enter the Walgreens, and saw him purchase two
more boxes of pseudoephedrine tablets. 
Officers continued to follow Vafaiyan as he left that Walgreens, and saw
Vafaiyan drive in an erratic manner. 
Vafaiyan was stopped and detained, and his identity was confirmed through
his driver’s license.

 

4. 
Upon approaching Vafaiyan’s vehicle, officers observed two plastic bags
laying in the front seat of the vehicle, with two boxes of pseudoephedrine
tablets in each bag.  Based on the
information gained in the prior investigation and based on Vafaiyan’s purchases
on that day, he was arrested for possession or transport of certain chemicals
with intent to manufacture a controlled substance.  In a suitcase located within the trunk of the
vehicle, numerous receipts were found from businesses in the Wichita Falls and
Dallas/Fort Worth areas indicating the purchase of a large number of pseudoephedrine
tablets, lithium batteries, and ether starting fluid.  From my experience in the investigation of
illegal drug activity, I know that all of these items are used in the
manufacture of methamphetamine. . . . Vafaiyan told me on that day that he knew
the items he had been purchasing were used to manufacture methamphetamine. 

 

5. 
Along with the receipts, officers also found a quantity of 20 dollar
bills located in the suitcase in Vafaiyan’s trunk.  The money was counted at the scene, in
Vafaiyan’s presence, and it totaled $2,300. 
Vafaiyan also had an additional $152 in his wallet.  Based on the DEA investigation and the facts
learned in my surveillance of Vafaiyan, this money was seized as being proceeds
from Vafaiyan’s illegal activity of money laundering and transporting certain
precursor chemicals with intent to manufacture methamphetamine.

 

6. 
On April 28, 2004, I served a grand jury subpoena on the Texoma
Community Credit Union, and learned that Vafaiyan had three accounts and a safe
deposit box at that establishment.  I
know based on my experience and training in the field of narcotics that persons
often keep proceeds from illegal activity in bank accounts and safe deposit
boxes.  Based on this knowledge and the
other knowledge I had gained regarding Vafaiyan’s illegal activities, I applied
for and received an evidentiary search warrant for [Vafaiyan’s safety deposit
box]. . . .

 

7. 
On April 29, 2004, pursuant to the warrant, I conducted a search of
Vafaiyan’s safety deposit box at the Texoma Community Credit Union.  My search revealed $200,382.62 in United
States currency in quantities of 50 dollar bills, 100 dollar bills, and loose coins.  The 50 dollar bills and 100 dollar bills were
packaged in two plastic Wal-Mart bags. 
Based on the investigation of Vafaiyan’s criminal activities and the
profits from his large scale selling of precursor materials used in the
manufacture of methamphetamine, DPS officer Mark Ball seized the $200,382.62 in
currency as contraband. . . . 

 

The record also contains
depositions from several convicted methamphetamine manufacturers who testified
regarding the frequency of their purchases of pseudoephedrine tablets from
Vafaiyan.  One of the individuals who purchased
pseudoephedrine tablets from Vafaiyan stated in his deposition that during May
and June 2003, he gave Vafaiyan $2,000–$3,000 three times a week, and then after
that, he gave Vafaiyan $2,000–$3,000 approximately once a month until January
2004.  Other individuals testified to
similar large purchases.  Moreover, in
his affidavit, Sergeant Ball averred that he personally reviewed paperwork and
receipts that were seized from Vafaiyan’s vehicles, the Kyle Cove property, and
Krystal Mart, as well as sales records from Target, Wal-Mart, and other various
distributors.  Based on his review of
those records, he calculated that Vafaiyan purchased 

at least the following amounts of
pseudoephedrine: 384 boxes and bottles in 2000; 1,375 boxes and bottles in
2001; 9,593 boxes and bottles in 2002; 11,206 boxes and bottles in 2003; and
521 boxes and bottles from January through April 2004.  In total, from January 2000 to April 2004,
Vafaiyan purchased 26,079 boxes and bottles of pseudoephedrine, along with
9,257 starting fluid cans and 12,137 lithium batteries.  My review of Vafaiyan’s receipts also
indicated that during this time period, Vafaiyan spent $211,284.81 on these
materials. . . . 

 

Sergeant Ball also reviewed paperwork related
to Vafaiyan’s personal bank accounts, as well as accounts related to his
Krystal Mart business.  Sergeant Ball
averred that

the Krystal Mart account had a
positive balance in 2002 of $1,778.43, it then had negative balances of
$5,874.10 and $6,884.67 in 2003 and 2004, respectively.  In other words, during the time of law
enforcement’s overall investigation into Vafaiyan’s activities, Vafaiyan’s
Krystal Mart business account showed a loss. 
I believe that this is further evidence that the large amounts of cash
seized from Vafaiyan were proceeds from his criminal activities, rather than
any legitimate source. 

 

Based on the evidence attached
to the State’s motion for summary judgment, the circumstantial evidence
established a substantial nexus that the $2,452.00 and the $200,382.62 were
proceeds gained from the commission of a felony in violation of Chapter 481 of
the Texas Controlled Substances Act, which made the sums of currency contraband
subject to forfeiture.  See Tex. Code Crim. Proc. Ann. art.
59.01(2)(C); Tex. Health & Safety Code Ann. ch. 481; Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency v. State,
944 S.W.2d 24, 28–29 (Tex. App.––Texarkana 1997, no writ) (holding that
evidence was legally sufficient to support forfeiture of currency when
testimony established more than a mere surmise or suspicion that the money was
connected to drug trafficking, even though appellant was convicted for
possession of methamphetamine rather than for sale of it, because baggies and
scales were also recovered).  Because the
State demonstrated probable cause for seizing the currency by establishing a
substantial connection or nexus between the currency and the defined criminal
activity, the trial court did not err by ordering the forfeiture of the
contraband currency.  See $11,014.00,
820 S.W.2d at 785.  We overrule
Vafaiyan’s twelfth issue and his issue fifteen A.

          C.      The
House and $4,300.00 in U.S. Currency

          In
his sixth issue, Vafaiyan argues that the trial court erred by ordering the
forfeiture of his house and $4,300.00 in U.S. currency.  The summary judgment evidence presented by the
State reveals that in early April 2004, Dale Newkirk, Diversion Investigator
with the United States Drug Enforcement Administration, contacted DPS Sergeant
Mark Ball and asked him to assist with an investigation of Vafaiyan.  On April 25 and 26, 2004, DPS troopers and
officers with the Wichita Falls Police Department followed Vafaiyan to the
Dallas/Fort Worth area; from there to Shreveport, Louisiana; and then back to
the Dallas/Fort Worth area. During the surveillance, Newkirk observed Vafaiyan
stop at eleven different stores, including Wal-Mart, Target, and two wholesale
distributors.  During two of those stops,
Newkirk observed Vafaiyan purchase pseudoephedrine tablets.  On April 27, 2004, Vafaiyan returned to his
home at Kyle Cove and was arrested pursuant to a warrant for possession of
methamphetamine.  Sergeant Ball
thereafter submitted an eighteen-page affidavit detailing the surveillance that
had been performed on Vafaiyan.  A
magistrate found that “the verified facts stated by Affiant in said Affidavit
show that Affiant has probable cause for the belief expressed therein and
establish existence of proper grounds” and issued a search warrant for
Vafaiyan’s home.  

During the search of
Vafaiyan’s home, officers found, among other things, two cases, each of which contained
twenty-four boxes of ten-count Sudafed 24-Hour; $4,300.00 in U.S. currency in a
desk drawer in a bedroom; a sack containing suspected pseudoephedrine pills in
a desk drawer; receipts for pills, batteries, and Coleman fuel; empty boxes for
starter fluid and pseudoephedrine; and a wireless observation system.  In his deposition, Vafaiyan admitted that he had
kept cases of Sudafed at his house and said that it was for safety purposes
(i.e., so it would not all get stolen if his store was broken into). 

          Based
on the evidence attached to the State’s motion for summary judgment, the State
had probable cause to search and seize Vafaiyan’s home because he had been seen
purchasing large quantities of pseudoephedrine, as well as other precursor
ingredients used in the manufacture of methamphetamine,[16] and taking them back to
his house.  The circumstantial evidence
established a substantial nexus that Vafaiyan’s home was being used in the
commission of a felony in violation of Chapter 481 of the Texas Controlled
Substances Act, which made his home contraband subject to forfeiture.  See
Tex. Code Crim. Proc. Ann. art. 59.01(2)(B)(i); Tex. Health & Safety Code
Ann. ch. 481; Real Prop. Located At 4125
Blanton, 230 S.W.3d at 488 (holding that evidence was legally and factually
sufficient to establish that property was contraband and that seizure was
valid);  see also Lot 6, NW 17’ of 5, Block 5, Port Lavaca Original Townsite,
(401 S. Commerce) v. State, No. 13-07-00326-CV, 2009 WL 1801466, at *4
(Tex. App.––Corpus Christi June 25, 2009, no pet.) (mem. op.) (holding that
because State had provided evidence demonstrating that appellant stored and
sold controlled substances in his house and because appellant judicially
confessed to engaging in such activities, State’s evidence was legally
sufficient to establish that appellant used or intended to use his house to aid
in unlawful delivery of controlled substances, thus supporting finding that
house was contraband subject to forfeiture). 
Additionally, circumstantial evidence established a substantial nexus
that the $4,300.00, which was found in a desk drawer in a bedroom in Vafaiyan’s
house, was proceeds gained from the commission of a felony in violation of Chapter
481 of the Texas Controlled Substances Act, which made the $4,300.00 in
currency contraband subject to forfeiture. 
See Tex. Code Crim. Proc. Ann.
art. 59.01(2)(C); Tex. Health & Safety Code Ann. ch. 481; Four Thousand One Hundred Eighty-Two Dollars
in U.S. Currency, 944 S.W.2d at 28–29. 
Because the State demonstrated probable cause for seizing the property
and the money by establishing a substantial connection or nexus between the
seized property and money and the defined criminal activity, the trial court
did not err by ordering the forfeiture of the contraband property and currency.  See $11,014.00, 820 S.W.2d at 785.  We overrule Vafaiyan’s sixth issue.

          

 

D.      The $2,100.00 and the 2000 Pontiac

          In
his thirteenth issue, Vafaiyan argues that the trial court erred by ordering
the forfeiture of $2,100.00 in U.S. currency and his 2000 Pontiac. 

          As
set forth above, Investigator Dilbeck and others followed Vafaiyan’s red
Pontiac Grand Am on March 22, 2004, as he made numerous stops to purchase
pseudoephedrine tablets.  On April 27,
2004, Sergeant Ball searched Vafaiyan’s 2000 Pontiac and found the following
items in the trunk:  six cases of
Prestone Starter, two cases of Sudafed 24-Hour, thirty-three boxes of 240-milligram
Sudafed, one box containing four cases of “Maxbrand Suda 60s” and six boxes of
Sudafed 240 milligrams, and five eight-packs of lithium batteries.  During the search, Sergeant Ball found
miscellaneous receipts in Vafaiyan’s possession and $2,100.00 in U.S. currency
inside the console of the Pontiac. 

Based on the evidence attached
to the State’s motion for summary judgment, the State had probable cause to
search and seize Vafaiyan’s Pontiac and the money therein because he had been
using the car to travel to different stores to purchase pseudoephedrine, as
well as other precursor ingredients used in the manufacture of methamphetamine.
See $574.37 U.S. Coin & Currency v.
State, No. 02-06-00434-CV, 2008 WL 623793, at *5–7 (Tex. App.––Fort Worth
Mar. 6, 2008, no pet.) (mem. op.) (holding that State demonstrated (1) that it
was more probable than not that the cash was either intended for use in or
derived from a violation of chapter 481 and thus constituted contraband subject
to forfeiture and (2) that truck was contraband because it was used in the
commission of a felonious act, i.e., possessing and transporting
methamphetamine).  Because the State
demonstrated probable cause for seizing the vehicle and the currency by
establishing a substantial connection or nexus between the currency and the car
and the defined criminal activity, the trial court did not err by ordering the
forfeiture of the Pontiac and the currency, which were contraband.  See $11,014.00, 820 S.W.2d at 785.  We overrule Vafaiyan’s thirteenth issue.

          E.      The
$43,290.94 From Savings and Checking Accounts

          In
his fifteenth issue, Vafaiyan argues that the trial court erred by forfeiting
$43,290.94 in U.S. currency. 

          After
executing the searches described above, on May 4, 2004, Sergeant Ball executed
a search warrant on First American Bank in Wichita Falls, Texas, and requested
information for all bank accounts held in Vafaiyan’s name. Sergeant Ball
discovered that Vafaiyan had three accounts at First American Bank with
balances of $30,519.37; $12,030.31; and $741.26, for a total of $43,290.94.  Sergeant Ball seized the money in those three
accounts “as being proceeds from Vafaiyan’s illegal activities.” 

Based on the evidence
attached to the State’s motion for summary judgment, the circumstantial
evidence established a substantial nexus that the $43,290.94 constituted
proceeds gained from the commission of a felony in violation of Chapter 481 of
the Texas Controlled Substances Act, which made the currency contraband subject
to forfeiture.  See Tex. Code Crim. Proc. Ann. art. 59.01(2)(C); Tex. Health &
Safety Code Ann. ch. 481; Four Thousand One
Hundred Eighty-Two Dollars in U.S. Currency, 944 S.W.2d at 28–29.  Because the State demonstrated probable cause
for seizing the currency by establishing a substantial connection or nexus
between the currency and the defined criminal activity, the trial court did not
err by ordering the forfeiture of the contraband currency.  See $11,014.00, 820 S.W.2d at
785.  We overrule Vafaiyan’s fifteenth
issue.

F.       The $128,719.49 From the Floor Safe and
the F-150 Pickup 

          In
his fourteenth issue, Vafaiyan contends that the trial court erred by forfeiting
$128,719.49 to the State.  In his
sixteenth issue, Vafaiyan contends that the trial court erred by ordering the
forfeiture of his F-150 Pickup Truck. 

          Sergeant
Ball’s affidavit states the following with regard to the search of Krystal Mart
and the F-150 pickup:

On August 9, 2004, I received
another telephone call from Investigator Newkirk of the DEA in Ft. Worth,
Texas.  Investigator Newkirk told me that
he had received a telephone call from Mike Ellsworth, who works in the security
department of Target Stores.  Mr.
Ellsworth had notified Investigator Newkirk that at around 10:30 that
morning[], Vafaiyan and another man, later identified as Troy Vaughn, were
inside the Denton, Texas Target store located at 2315 Colorado Blvd., Denton,
Texas.  Mr. Ellsworth further stated that
Vafaiyan and Vaughn had each purchased the maximum amount of pseudoephedrine
products and then exited the store. 
Personnel from the Target store observed and video-taped these events.  Mr. Ellsworth stated that store security
personnel observed Vafaiyan and Vaughn jumping in the air, laughing, and
clapping their hands together.  The store
security personnel also observed Vafaiyan put the pseudoephedrine products
inside Vafaiyan’s vehicle.  The store
security personnel then observed Vafaiyan depart the store in a 2001 Maroon
Ford F-150 pickup bearing TX Tag 4TR-G64. 
Investigator Newkirk also told me that he had received a second
telephone call from Mr. Ellsworth at approximately 1:30 p.m. that same
day.  During the second telephone call,
Mr. Ellsworth stated that Vafaiyan and Vaughn were inside the Target store near
Love Field Airport in Dallas, Texas and that each had purchased large
quantities of pseudoephedrine products. 
I know from my training and experience that in order to get around maximum
purchase amounts allowed by federal regulations, meth cooks and their suppliers
frequently buy the maximum amount of pseudoephedrine products at multiple
stores, which is known as “smurfing.”

20. 
As a result of the information received from Investigator Newkirk, I
traveled to the Krystal Mart to speak with Vafaiyan about his trip to Dallas
that day.  Vafaiyan stated that he had
not been to Dallas that day.  I advised
officers to hold Mr. Vafaiyan outside the store while I obtained another search
warrant for Krystal Mart, and for the 2001 F-150 pickup Vafaiyan had driven
that day.  . . . 

 

The pickup contained twenty-five empty store
sacks, correlating with some of the stores at which Vafaiyan had stopped to
purchase pseudoephedrine and tending to prove that Vafaiyan had transported the
pseudoephedrine in his vehicle.  The
search and seizure log from the search of Krystal Mart revealed that within a
safe inside Krystal Mart, officers found $128,719.49; three rings; and a
NationsBank credit card. 

Based on the evidence
attached to the State’s motion for summary judgment, the State had probable
cause to search and seize Vafaiyan’s Ford F-150 pickup and the money from the
safe at Krystal Mart because Vafaiyan had used the pickup to travel to
different stores to purchase pseudoephedrine, which he sold in Krystal
Mart.  See $574.37, 2008 WL 623793, at *5–7.  The circumstantial
evidence established a substantial nexus that the $128,719.49 constituted
proceeds gained from the commission of a felony in violation of Chapter 481 of
the Texas Controlled Substances Act, which made the currency contraband subject
to forfeiture, and the pickup was contraband because it was used in the
commission of a felony in violation of Chapter 481 of the Texas Controlled
Substances Act, which made the pickup contraband subject to forfeiture.  See
Tex. Code Crim. Proc. Ann. art. 59.01(2)(C); Tex. Health & Safety Code Ann.
ch. 481; Four Thousand One Hundred
Eighty-Two Dollars in U.S. Currency, 944 S.W.2d at 28–29.  Because the State demonstrated probable cause
for seizing the currency and the Ford F-150 by establishing a substantial
connection or nexus between the currency and the Ford F-150 and the defined
criminal activity, the trial court did not err by ordering the forfeiture of
the contraband.  See $11,014.00, 820
S.W.2d at 785.  We overrule Vafaiyan’s
fourteenth and sixteenth issues.

          G.      Trial
Court Properly Granted Summary Judgment For the State

          In
the remainder of his eighth issue and in his eleventh issue, Vafaiyan argues
that the trial court erred by granting the State’s motion for summary judgment
and that the trial court erred by forfeiting his assets because the forfeitures
were barred by the rule of law.  

          We review a summary
judgment de novo.  Mann Frankfort
Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex.
2009).  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.  Id. 
We indulge every reasonable inference and resolve any doubts in the
nonmovant’s favor.  20801, Inc. v.
Parker, 249 S.W.3d 392, 399 (Tex. 2008). 
A plaintiff is entitled to summary judgment on a cause of action if it
conclusively proves all essential elements of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  

          Here,
we have reviewed each of the seizures and found that the items seized
constituted contraband and were subject to forfeiture.[17]  The circumstantial evidence attached to the
State’s motion for summary judgment demonstrated a substantial nexus between each
of the seized properties and the defined criminal activity.  

Although Vafaiyan and his
counsel each filed a response to the State’s motion for summary judgment, the
State objected to Vafaiyan’s “self-serving, conclusory affidavit” (which was
the only “evidence” he attached to his response) and objected to nine out of
the ten exhibits attached to Vafaiyan’s counsel’s response.  The trial court granted all of the State’s
objections to Vafaiyan’s summary judgment evidence, leaving the affidavit of
Sergeant Ball as the only “controverting” summary judgment evidence.  Sergeant Ball’s affidavit does not controvert
the evidence presented by the State but rather, as set forth above, bolsters it.  Thus, there is no contradictory evidence to
raise a genuine issue of material fact.  Because
we have held above that the trial court did not abuse its discretion by
ordering the forfeiture of each of the items and amounts of currency set forth
above and because we have found nothing that says that the forfeiture of those
items is barred by the rule of law, we hold that the trial court properly
granted summary judgment for the State.  $32,960 in U.S. Currency v. State, No.
13-04-00526-CV, 2005 WL 2560376, at *3 (Tex. App.–Corpus Christi Oct. 13, 2005,
no pet.) (mem. op.) (holding that trial court properly granted summary judgment
for the State because the State had adequately established a reasonable belief
that a substantial connection existed between the property to be forfeited and
the underlying criminal activity).  We
overrule the remainder of Vafaiyan’s eighth issue and his eleventh issue.

IX.  Findings
of Fact and Conclusions of Law Not Required

          In
his fourth and tenth issues, Vafaiyan argues that the trial court abused its
discretion by failing to make findings of fact and conclusions of law.  Vafaiyan contends that such failure forced
him to guess at all the possible reasons for denying his motions, which made it
difficult for him to appeal. 

          Findings
of fact and conclusions of law have no place in a summary judgment
proceeding.  Linwood v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994).  The reason findings and conclusions “have no
place” in a summary judgment proceeding is that for summary judgment to be
rendered, there cannot be a “genuine issue as to any material fact[,]” and the
legal grounds are limited to those stated in the motion and response.  Tex. R. Civ. P. 166a(c); IKB Indus. (Nig.) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex.
1997); Stiles v. Resolution Trust Corp.,
867 S.W.2d 24, 26 (Tex. 1993).  In other
words, if summary judgment is proper, there are no facts to find, and the legal
conclusions have already been stated in the motion and response.  IKB
Indus. (Nig.) Ltd., 938 S.W.2d at 441. 
The trial court should not make, and an appellate court cannot consider,
findings of fact in connection with a summary judgment.  Id.

          Here,
because the trial court disposed of the case by granting the State’s motion for
summary judgment, we hold that the trial court did not abuse its discretion by
not making findings of fact and conclusions of law.  See
Linwood, 885 S.W.2d at 103.  We
overrule Vafaiyan’s fourth and tenth issues.

X.  No Hearing
Required on the Merits of The Seizure of Vafaiyan’s Home

          In
his second issue, Vafaiyan argues that the trial court abused its discretion by
denying his motion for a hearing on the merits of the seizure of his home.[18]  Vafaiyan appears to argue that the trial court
was required to decide the case on the merits.

          Article
59.05 of the code of criminal procedure, which governs forfeiture proceedings,
states that “[a]ll cases under this chapter shall proceed to trial in the same
manner as in other civil cases.”  Tex.
Code Crim. Proc. Ann. art. 59.05(b) (Vernon 2006).  The rules of civil procedure provide that a
party may file a motion for summary judgment, along with attachments.  See
generally Tex. R. Civ. P. 166a.  If
such motion and attachments show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as a matter of
law on the issues expressly set out in the motion, then “[t]he judgment sought
shall be rendered forthwith.”  Tex. R.
Civ. P. 166a(c).  If all issues are decided
by summary judgment, no trial is necessary. 
See generally Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986) (noting that
the “genuine issue” summary judgment standard is “very close” to the
“reasonable jury” directed verdict standard and that the inquiry under each is
the same:  whether the evidence presents
a sufficient disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law).

          Because
we have previously held that the trial court properly granted summary judgment
in favor of the State (which included the summary judgment granting forfeiture
of Vafaiyan’s home as contraband), we hold that the trial court did not abuse
its discretion by not holding a hearing on the merits of the seizure of
Vafaiyan’s house.  See generally Tex. R. Civ. P. 166a.  We overrule Vafaiyan’s second issue.

 

 

 

 

XI.  No Abuse
of Discretion Shown By Denying Motion for New Trial

          In
his ninth issue, Vafaiyan argues that the trial court abused its discretion by
denying his motion for reconsideration, rehearing, and new trial.[19]  Specifically, Vafaiyan argues in his brief that
the trial court should have granted a new trial because he submitted new
evidence, in the form of two affidavits, that proves the source of the seized
money and that the trial court should have granted a new trial because the
damages were manifestly too large. 

          Whether
a motion for new trial on the ground of newly discovered evidence will be
granted or refused is generally a matter addressed to the sound discretion of
the trial judge, and the trial judge’s action will not be disturbed on appeal
absent an abuse of discretion.  Jackson v. Van Winkle, 660 S.W.2d 807,
809 (Tex. 1983), overruled on other
grounds by Moritz v. Preiss, 121 S.W.2d 715 (Tex. 2003).  On review, every reasonable presumption will
be made in favor of orders of the trial judge refusing new trials.  Id. at
809–10.

Vafaiyan’s motion for new
trial mentions “new discover[y].”  To
obtain a new trial based on newly discovered evidence, Vafaiyan was required to
satisfy the following elements:  (1)
admissible relevant evidence introduced on the hearing for new trial
demonstrating the existence of newly discovered evidence relied upon; (2) no
knowledge of such evidence until after the conclusion of the trial and that
such evidence could not have been discovered prior to the trial with the
exercise of due diligence; (3) such evidence was not cumulative or to be used
for impeachment; and (4) such evidence would probably produce a different
result if a new trial was granted.  Rivera v. Countrywide Home Loans, Inc.,
262 S.W.3d 834, 844 (Tex. App.––Dallas 2008, no pet.).  Vafaiyan’s motion for new trial references
two exhibits that are not attached to his motion, but he does not explain why
this evidence could not have been discovered prior to the time his response was
due.  Because the evidence is not
attached to his motion for new trial, we cannot tell, and Vafaiyan does not
specify, whether it is cumulative or whether it is to be used for impeachment.  Moreover, Vafaiyan has not discussed how such
newly discovered evidence, assuming it exists, would probably produce a
different result if a new trial was granted. 
Vafaiyan has therefore failed to satisfy the elements necessary for
obtaining a new trial based on newly discovered evidence.  See id.  We hold that the trial court did not abuse
its discretion by denying Vafaiyan’s amended motion for new trial.  See id.
(holding that trial court did not abuse its discretion by denying motion for
new trial when elements of newly discovered evidence were not met).  

Vafaiyan’s motion for new
trial also contains a one-sentence argument that “[w]ithout a New Trial, the
damages to the defendant would be manifestly too large.”  In his brief, Vafaiyan states that “Rule 320
authorizes a new trial for good cause when damages are manif[e]stly too large”
and argues that “forfeiting my 30 years savings to [the S]tate including my house
bought 25 years earlier was manifestly too large.” 

Vafaiyan’s argument is not
supported by case law.  Article 59 of the
Texas Code of Criminal Procedure specifically provides that “[p]roperty that is
contraband is subject to seizure and forfeiture.”  See Tex.
Code Crim. Proc. Ann. art. 59.02(a).  A
case filed under article 59 proceeds in rem, against the property that has been
seized.  Silver Chevrolet Pickup, 140 S.W.3d at 692.  The forfeiture statutes do not set a dollar
limit on what can be forfeited. 
Additionally, the forfeiture statutes have not been shown by the
clearest proof to be so punitive in form and effect as to render them
criminal.  See Fant v. State, 931 S.W.2d 299, 306–07 (Tex. Crim. App.
1996).  Considering only the evidence
that is favorable to the award, as we are required to do, see Browning v. Paiz, 586 S.W.2d 670, 675–76 (Tex. Civ. App.––Corpus
Christi 1979, writ ref’d n.r.e.), we hold that the award is not so excessive
that it shocks the conscience.  The trial
court thus did not abuse its discretion by denying Vafaiyan’s motion for new
trial on the ground that the damages were allegedly “manifestly too
large.”  We therefore overrule Vafaiyan’s
ninth issue.

 

 

 

 

 

XII. 
Conclusion

          Having
overruled each of Vafaiyan’s issues, we affirm the trial court’s summary judgment
granted in favor of the State.[20]

                                                                             

PER CURIAM

PANEL:  WALKER,
J.; LIVINGSTON, C.J.; and MEIER, J.

DELIVERED: 
August 31, 2010











[1]See Tex. R. App. P. 47.4.





[2]Vafaiyan’s
issues include one through sixteen, as well as a separate issue that he lists
as “15A.”  

 





[3]Most
of the arguments that Vafaiyan raises concern rulings on motions that he
filed.  To avoid duplicity, we do not
detail all of the motions that Vafaiyan filed and the rulings thereon in this
background section but instead discuss them below under their respective
headings.

 





[4]The
State also brought a criminal case against Vafaiyan for first-degree money
laundering.  In March 2006, a jury
convicted Vafaiyan of first-degree money laundering, and he received a life
sentence.  Vafaiyan appealed, and we
affirmed the conviction.  See Vafaiyan v. State, 279 S.W.3d 374,
391 (Tex. App.––Fort Worth 2008, pet. ref’d). 

 





[5]The
record before us does not contain a ruling on Vafaiyan’s motion to remain pro
se on his house case, which was filed on December 18, 2008. However, Vafaiyan
later filed a motion to dismiss his attorney, and his attorney filed a motion
to withdraw.  On February 10, 2009, the
trial court granted Vafaiyan’s attorney’s motion to withdraw. 





[6]Although
we are unable to locate in the record before us or on the Wichita County Civil
Case Summary sheet any motion to lease house and any order denying such motion,
we will, in the interest of justice, presume that such motion was filed and
that an order exists denying it. 





[7]To
the extent that Vafaiyan appears to argue that Judge Price was previously
employed by the City, the record from the hearing on the motion to recuse
demonstrates that the trial court found that the forfeiture was accomplished by
district and state employees, not city employees, and that the City of Wichita
Falls was not a party to the case. 

 





[8]To
the extent that Vafaiyan’s argument encompasses a challenge to the propriety of
the ruling on the motion to lease his home, we hold that the record before us
does not reveal that the trial court abused its discretion because article
59.02(e) allows the trial court to sell the seized property if that is the only
method by which the value of the property may be preserved.  See
Tex. Code Crim. Proc. Ann. art. 59.02(e) (Vernon Supp. 2009). 

 





[9]Vafaiyan
also argues that holding the consolidation hearing in the absence of one party
was improper and invalid.  But the record
reveals that he was present at the hearing. 
Vafaiyan does not have standing to argue for others who were not present
and does not show how he was harmed by the fact that they were not present.





[10]As
stated by the assistant district attorney at the hearing on the motion to
consolidate, 

The witnesses that will testify I think would testify
to the same facts.  Obviously, the times
of seizure and circumstances regarding the seizure of each piece of property
will be a little bit different, but the common scheme of the profits that were
made by Mr. Vafaiyan in these cases will be the same throughout each case. 





[11]Although
Vafaiyan’s brief references “166(g),” it appears that he meant “166a(g)”
because he does not complain that the trial court should have required the
State to set forth an additional statement of pertinent facts.  





[12]This
response also covered Vafaiyan’s house at 2900 Kyle Cove.  





[13]We
note that Vafaiyan’s argument challenges only the trial court’s ruling
sustaining the State’s objections to his supplemental response to the State’s
motion for summary judgment.  Vafaiyan
does not challenge the trial court’s ruling sustaining the State’s objections
to his affidavit and to the summary judgment evidence filed by his counsel.

 





[14]The
trial court can decide the motion for summary judgment on submission, without
an appearance by the attorneys before the court.  Martin
v. Martin, Martin & Richards, Inc., 989 S.W.2d 357, 359 (Tex.
1998).  Regardless, the hearing date
determines the time for response to the motion. 
Id.





[15]Vafaiyan
did not sign the agreement, and therefore argues that it is void because he was
representing himself pro se in the forfeiture case involving his house.  The Rule 11 Agreement was approved by the
trial court and filed on February 5, 2009, but the document does not state
whether Vafaiyan received a copy. 
Because, as discussed below, Vafaiyan’s motion for continuance and leave
to amend his response were denied, the failure to include Vafaiyan in the Rule
11 Agreement is harmless.





[16]Vafaiyan
admitted during his deposition that he had been told by the DEA that
pseudoephedrine is the primary precursor chemical utilized in the illicit manufacturing
of methamphetamine.  





[17]The
trial court’s order granting final summary judgment of forfeiture states,
“Although the cases have been consolidated, the Court’s decision has considered
each case and factual situation separately in ruling on the pending Motion for
Summary Judgment.”  

 





[18]The
record contains an “Order Granting Plaintiff’s Motion To Sell.”  In that order, the trial court states that it
held a hearing with all parties present, but no transcript appears in the
record before us.  For purposes of
Vafaiyan’s argument, we will presume that the trial court did not consider
Vafaiyan’s motion at this hearing.  





[19]We
note that Vafaiyan filed an “Amended Motion For Reconsideration/New Trial And
Request To Set Aside The Order” (hereinafter referred to as “motion for new
trial”) and presume that he is arguing that the trial court abused its
discretion by denying this motion, which replaced his prior motion.  See
Tex. R. Civ. P. 62 (stating that an amended pleading adds to or withdraws from
that which was previously pleaded to correct or to plead new matter and
completely replaces and supersedes the previous pleading).

 





[20]On
November 23, 2009, Vafaiyan filed a motion arguing that part of the appellate
record pertaining to trial court cause number 164,160-C had been lost or
destroyed.  We carried that motion to
submission and now DENY it as moot
because the appellate record before us contains a second supplemental clerk’s
record with the necessary documents from 164,160-C.  As noted in the analysis above, any documents
mentioned by Vafaiyan in his brief that were not found in the appellate record
were presumed to have been filed and denied; the actual documents were not
necessary for deciding the issues Vafaiyan raised.